CHICAGO EXPORT PACKING COMPANY, Plaintiff-Appellant, v. TELE-DYNE INDUSTRIES, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—0361

Opinion filed December 14, 1990.

Crotty & Chacon, of Chicago (Zacarias R. Chacon and Bradley D. Lance, of counsel), for appellant.

Baker & McKenzie, of Chicago, and James A. Hochman, of Rosemont (Francis D. Morrissey, Edward J. Zulkey, Mark L. Karasik, Michael A. Pollard, Donald J. Hayden, and L. Michael Tarpey, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Chicago Export Packing Company, brought an action against defendants Coldwell Banker & Company (Coldwell), Carl Manofsky, Robert Bley, and Goode & Associates (Goode) to recover damages allegedly sustained as a result of defendants' fraudulent and negligent misrepresentations in a commercial lease transaction. The trial court granted defendants' motion for summary judgment, holding that because it was undisputed that the property in question was actively served by rail in the past, defendants had not misrepresented the availability of rail service to the facility. On appeal, plaintiff contends that the trial court erred in granting summary judgment, and that Goode and Coldwell, through their respective agents Bley and Manofsky, made various misrepresentations concerning the availability of rail service to the subject property. (A complaint against Teledyne Industries, Inc., was dismissed and that order is not involved in this appeal.)

The subject commercial property, located at 3400 West 43rd Street in Chicago, is owned by Teledyne and consists of certain land

and a warehouse facility. Teledyne engaged the brokerage services of Coldwell to lease or sell the premises. Manofsky, a real estate broker with Coldwell, prepared a listing sheet describing the property, including a representation that there was an inside rail track serviced by Atchison, Topeka and Santa Fe (Santa Fe) on the property.

Plaintiff is engaged in the business of receiving, crating, packing, storing and shipping machinery, equipment, and various other goods. Bley, a real estate broker employed by Goode, contacted plaintiff's president, Charles Nashan, who was interested in finding a new business location. Nashan and Bley discussed plaintiff's building needs, which included a general requirement for active rail service. Plaintiff was receiving rail service at its current location.

In July 1980, Bley contacted Nashan about the sale or lease of the 43rd Street facility owned by Teledyne. Over the next few months, plaintiff's representatives and the defendants visited the 43rd Street facility on numerous occasions. The property is adjacent to the Santa Fe railroad and contained two rail lines leading from the Santa Fe yard directly into the facility. No tenant was in possession of the premises, nor were any rail cars present inside the facility at the time plaintiff inspected the property. The prior tenant in the 43rd Street facility had received Santa Fe rail service.

Although a lease had not been signed because the parties were still negotiating, Teledyne allowed plaintiff to begin cleaning the facility in October 1980 and to move equipment in on November 1. Negotiations between the parties continued and several offers and counteroffers were made concerning the sale or lease of the property.

On November 10, 1980, plaintiff's vice-president, James Nashan, wrote Santa Fe requesting rail service for special equipment weighing as much as 190,000 pounds with a width of 12 feet plus. On December 10, 1980, Santa Fe responded to plaintiff's letter, stating that after completing a field survey of the tracks leading into the facility, it would be unable to accommodate plaintiff's request for excess dimensional and heavily weighted shipments. In a verified statement, Rufus M. Wujcik, Chicago agent of Santa Fe, explained it would not provide service to plaintiff for several reasons; specifically, the high, wide, heavy loads consigned to plaintiff posed a safety risk; service to that track became impracticable due to use of the surrounding property for trailer storage; and doubt whether plaintiff would produce sufficient traffic to justify reestablishment of the switch connection.

After receiving Wujcik's letter, plaintiff's vice-president, Richard Nashan, met with the defendants on December 16, 1980. According to Richard Nashan's deposition, defendants told him that the letter was

part of a corporate "boondoggle" and that Wujcik was "out of his mind"; that he was "just Santa Fe's corporate guy"; and that Wujcik did not know what he was doing. Nashan stated that defendants assured him that the 43rd Street facility had active rail service. Defendants advised Nashan to write to Santa Fe again to determine its requirements for rail service. Nashan further stated he believed defendants' representations because they were professional real estate brokers.

On December 19, 1980, defendants met with plaintiff and stated that it would have to sign a draft lease or vacate the premises. Plaintiff alleges that because of defendants' repeated assurances that they would have their people take care of the problem with the railroad, it signed a draft lease for the 43rd Street facility. At the time plaintiff entered into the draft lease, it had not received a response from Santa Fe concerning the eligibility requirements for rail service. After subsequent changes and review of the lease by plaintiff's counsel and Charles Nashan, the final lease agreement was executed on January 10, 1981. The lease did not include a contingency or warranty provision concerning rail service.

Plaintiff never received rail service; however, it remained in the facility for several months. Plaintiff eventually stopped paying rent and failed to meet other obligations under the lease. On June 15, 1982, plaintiff filed this action seeking rescission of the lease agreement, an accounting, and other damages against defendants. On November 15, 1985, plaintiff filed a second amended complaint containing five counts. (Three counts have been dismissed; only the fraudulent and negligent misrepresentation counts are subject to this appeal.)

On appeal, plaintiff contends that defendants' representations regarding the available active rail service at the property were made with the intent to mislead, deceive and defraud, and that plaintiff would not have entered into the lease but for such representations. In addition, plaintiff contends that defendants breached their duty to exercise due care by negligently misrepresenting that the rail service was available.

A motion for summary judgment is proper where the documents on file show there *is* no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In reviewing the order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact ex-

ists. *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1098, 441 N.E.2d 860, 863.

■ In order to prevail under a claim of fraudulent representation, plaintiff must prove the following elements: (1) a false statement of a material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on it and did rely on it; (4) the statement was made for the purpose of inducing the other party to act; and (5) reliance by the person to whom the statement was made led to his injury. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 719, 506 N.E.2d 1052, 1055, citing *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185-86, 441 N.E.2d 324, 331-32.

■ In determining whether the injured party reasonably relied on the false statement, courts look to all the relevant circumstances surrounding the alleged misrepresentation. (*Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 506 N.E.2d 1052; *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) Moreover, it is only where parties do not have equal knowledge or means of obtaining knowledge of the facts which are allegedly misrepresented that a person may justifiably rely on them. (*Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 606, 453 N.E.2d 932, 936.) A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another. *Central States*, 117 Ill. App. 3d at 606, 453 N.E.2d at 936.

In *Knightsbridge Realty Partners, Ltd.-75 v. Pace* (1981), 101 Ill. App. 3d 49, 427 N.E.2d 815, plaintiff argued that in reliance on defendant's promise to deliver a guaranty contract at closing, plaintiff paid the purchase price even though defendant failed to produce the guaranty contract. The court rejected plaintiff's claim, holding that where the falsity of the representation is known to plaintiff, it is not reasonable to persist in relying upon the representation. The court found as a matter of law that plaintiff could not have been induced by defendant's representations to pay the purchase price at the closing when at the same time defendant did not deliver the guaranty. *Knightsbridge Realty Partners*, 101 Ill. App. 3d 49, 427 N.E.2d 815.

■ In this case, plaintiff contends that it justifiably relied upon defendants' representations of future rail service, and that it had no choice other than to execute the lease after incurring the expense of moving into the facility. However, plaintiff was aware that Santa Fe was unwilling to provide rail service to the facility after receiving the

letter of December 10, 1980. In that letter, Santa Fe unequivocally stated that it had completed its field survey of the tracks leading into the facility and that the adjacent clearances and track curvature would not support the excess dimensional and heavily weighted shipments requested by the plaintiff. Nevertheless, plaintiff chose not to vacate the facility, but instead entered into the draft lease and executed the final lease without including any contingency or warranty provision that would permit it to avoid the contractual obligations under the lease. It was not reasonable for plaintiff to persist in relying upon defendants' representations that rail service would be available after Santa Fe had stated that it would not provide rail service. Accordingly, plaintiff's claim of fraudulent misrepresentation must fail.

Plaintiff next contends that defendants made negligent misrepresentations, thereby breaching their duty to exercise due care when they were aware that plaintiff required rail service in the operation of its business. Plaintiff claims that defendants assured it of the availability of rail service from the time plaintiff moved into the facility in October through December, 1980 when the draft lease was first signed. As a result of defendants' repeated assurances, plaintiff entered into the lease agreement.

■ In order to prevail under a claim of negligent misrepresentation, plaintiff must prove the following elements: (1) a duty owed by defendant to plaintiff; (2) a breach of such duty; and (3) injury proximately resulting from such breach. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409, citing *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623.) Plaintiff cites the *Zimmerman* case for the proposition that an action will lie against a defendant for negligent misrepresentation where he or she breaches a duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in conduct of their economic affairs. In that case, the court found that plaintiff had stated an action for negligent misrepresentation against defendant brokers, who had made misrepresentations as to lot size, flooding and other defects in the property, in light of special knowledge of one of the defendants who had lived next door and worked for subdivider.

■ We find, however, that the facts in this case are distinguishable from those in *Zimmerman*. Here, plaintiff is an established business entity with familiarity in using rail service evidenced by its usage of rail at its previous location. Also, defendants in this case did not misrepresent that the 43rd Street facility previously received rail service. Defendants' assurances of future rail service do not constitute

actionable fraud because a plaintiff cannot recover for a false representation of intention or future conduct. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.

■ Plaintiff's reliance upon defendants' representations because they were professional real estate brokers is unwarranted, especially since Santa Fe had notified it that rail service would be unavailable. Therefore, plaintiff acted at its own peril when it executed the lease without including a warranty or contingency provision, and its claim for negligent misrepresentation also fails.

In its defense, Coldwell contends that plaintiff is presumed to know the law; specifically, section 45 of "An Act concerning public utilities" (Ill. Rev. Stat. 1979, ch. 111⅔, par. 45, repealed by Pub. Act 84—102, §4, eff. July 23, 1985), which provided that the railroad's obligation to serve the property was conditioned upon business factors such as the revenue and expense from that service. Having reached our decision on other grounds, we need not address the applicability of that statute in resolving this case.

For the foregoing reasons, the judgment of the circuit court of Cook County granting defendants' motion for summary judgment is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.