**L.R.J. RYAN, Wersi Chicago, Incorporated, also known as International Instrument Importers, Incorporated, Muxical Corporation, et al., Plaintiffs–Appellants,**

v.

**WERSI ELECTRONICS GmbH AND COMPANY, Frank Gross, Wilhelm E. Franz, et al., Defendants–Appellees.**

No. 91–3710.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1992.

Decided Aug. 11, 1993.

Douglas W. Graham, Chicago, IL (argued), for plaintiffs-appellants.

Russell J. Hoover, Jenner & Block, Chicago, IL (argued), for defendants-appellees.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

This is an appeal from an order of summary judgment entered in favor of the defendant in a suit alleging breach of contract and fraudulent misrepresentation. For the reasons that follow, we affirm in part and reverse and remand in part.

## I

## BACKGROUND

The appellant, Mr. L.R.J. Ryan, is an independent business consultant and the sole owner of Ryan Organization International, Inc. (ROI). The current dispute began to evolve at a trade show in 1984, when Mr. Ryan first observed a line of electronic musical instruments manufactured by a German company, Wersi GmbH & Co. (Wersi–Germany). Wersi–Germany is run by two German brothers, Wilhelm and Reinhard Franz, and owns a subsidiary company, Wersi Electronics, Inc. (WEI), in the United States. Frank Gross, also a German citizen, is the president of the Pennsylvania-based WEI. WEI imports and distributes Wersi–Germany's musical instruments as *kits* that purchasers must assemble themselves. After viewing these kits, Mr. Ryan believed that there was a substantial potential market for a *pre-assembled* version of the instruments. Pursuant to this belief, in late 1984, Mr. Ryan began negotiating with the Franz brothers and Wersi–Germany to become a United States distributor of pre-assembled Wersi instruments. At that time, no pre-assembled Wersi instruments were being marketed in the United States, and Mr. Ryan hoped to obtain an exclusive United States distributorship agreement.

When Mr. Ryan initially approached the Franz brothers about the possibility of his distributing the Wersi instruments, they expressed a tentative interest in selling the entire company. Both parties acknowledge that, from late 1984 to sometime in 1987, multiple detailed letters and draft purchase proposals were exchanged between Mr. Ryan and the Franz brothers. Additionally, Mr. Ryan made several trips to Germany to meet with the Franz brothers. Ultimately, however, Mr. Ryan was unable to secure financing to complete the purchase of the entire Wersi–Germany enterprise. It is undisputed that these negotiations continued for several years and that both Mr. Ryan and Wersi–Germany had the aid of counsel. The current dispute centers on whether Mr. Ryan and the Franz brothers entered into any enforceable contract at all.

According to Mr. Ryan, in 1984, when he began negotiating with the Franz brothers to purchase Wersi–Germany, he and the Franz brothers had already entered an oral contract that entitled him to the exclusive United States distributorship rights of the pre-assembled Wersi instruments. Mr. Ryan argues that, although the parties continued to negotiate for a more extensive business relationship, the oral agreement was at all times an independent and fully enforceable contract. In contrast, the Franz brothers contend that, although both the possibility of a distributorship agreement and the possibility of a company purchase were discussed extensively with Mr. Ryan, no final agreement was reached on either possibility. Sometime in 1986 it became known to Mr. Ryan that Wersi–Germany and a Canadian company had attempted to enter into a worldwide distributorship agreement that Mr. Ryan believed infringed upon his rights. However, Mr. Ryan took no legal action at that time and his negotiations with Wersi–Germany continued.

On June 20, 1986, during the same time period that Mr. Ryan and Wersi–Germany were negotiating for a distributorship or purchase agreement, Mr. Ryan entered into a written and fully executed agreement with

WEI (Wersi-Germany's Pennsylvania subsidiary) to purchase twenty percent of WEI's stock for $500,000. According to Mr. Ryan, this stock purchase was proposed by Wersi–Germany as the only way that he could "retain" the exclusive distributorship rights to which he maintains he was already contractually entitled. He also contends that the stock purchase was accompanied by an oral agreement. Mr. Ryan also contends that this oral agreement provided that the $500,000 purchase price would entitle him to a $500,000 open account to purchase component parts from WEI.

At the time of Mr. Ryan's stock purchase, WEI was faltering financially and was named as a defendant in several pending lawsuits. According to Mr. Ryan, Wersi–Germany fraudulently represented to him that WEI was in sound financial condition and was a solid investment. In fact, submits Mr. Ryan, Wersi–Germany represented to him that the stock purchase was so risk-free that Wersi–Germany would back up the financing with a letter of credit from its bank. Before the final stock purchase, Mr. Ryan was provided with WEI's annual financial reports. However, the first page of the financial documents, which indicated that the company was being sued, had been detached. Nonetheless, the information provided to Mr. Ryan did reflect that WEI was in financial difficulty. Mr. Ryan further submits that, at the time of the stock purchase, Wersi–Germany again acknowledged that he had the exclusive rights to distribute pre-assembled Wersi instruments in the United States. In contrast, Wersi–Germany contends that the stock purchase was between WEI and Mr. Ryan and did not involve Wersi–Germany. Finally, submits Wersi–Germany, WEI is not a party to the current lawsuit and the stock purchase is thus irrelevant.

In June 1987, at a trade show for retail music dealers, Gross and WEI presented themselves as the exclusive wholesale distributor of Wersi products in the United States and distributed literature showing the instruments pre-assembled. Subsequently, in 1990, Mr. Ryan brought this five-count suit against Wersi–Germany, the Franz brothers, and Gross. Specifically, Mr. Ryan alleged

one breach of contract count and four fraud-based counts. Mr. Ryan's central contention is that in 1984 he entered a binding, oral contract with Wersi–Germany. He claims that this contract granted him the exclusive right to distribute pre-assembled Wersi instruments in the United States and that Wersi–Germany breached the agreement by allowing Gross and WEI to distribute pre-assembled Wersi products in the United States. He further contends that, in reliance upon this alleged 1984 agreement, he set up two new corporations, "Wersi Chicago, Inc." and "The Muxical Corporation" (which he wholly owns); hired five executive employees; had a variety of marketing materials designed and printed; and ceased his other business dealings to work full-time on the project with Wersi–Germany. The district court granted summary judgment for Wersi–Germany and this appeal follows.

## II

### DISTRICT COURT PROCEEDINGS

#### A. *Breach of Contract*

The district court concluded that, as a matter of law, taking the evidence and all reasonable inferences from that evidence in the light most favorable to Mr. Ryan, no enforceable contract existed. Specifically, the district court determined that, even taking all of Mr. Ryan's pleadings as true, the alleged oral contract lacked durational and sales quota terms, which are essential for a contract between a manufacturer and distributor to be enforceable under Illinois law. The court also rejected Mr. Ryan's promissory estoppel argument; it found that the alleged promise for exclusive rights was "ambiguous as to its scope, duration, and sales requirements" and thus unenforceable under Illinois common law. Mem. Op. at 13, 1991 WL 233330.

Additionally, the district court noted that the alleged contract was not in writing and was not performable within a one-year period and thus was unenforceable under the Illinois Statute of Frauds. *See* Ill.Rev.Stat. ch. 59, ¶ 1. Although the contract lacked a time frame, the district court found that both the nature of the exclusive rights granted and

the related writings indicated that it could not be performed within one year. The district court rejected Mr. Ryan's contention that part performance fulfilled the requirements of the statute. Rather, concluded the court, because the alleged contract contained no specific requirements for Mr. Ryan, ordinary business preparations could be no defense. Mem. Op. at 12–13.

The district court noted that Mr. Ryan could not rely upon the written documents that he had submitted to show the terms of the alleged contract because the documents were unsigned and both parties had indicated an intent to be bound only by a final formal written agreement. However, with his pleadings, Mr. Ryan submitted a letter that he had received from Dieter Henningsen, General Manager Sales and Marketing of Wersi–Germany. The letter was dated February 23, 1987, was on Wersi–Germany letterhead, was signed by Mr. Henningsen as General Manager, and was titled "CONFIRMATION OF BUSINESS ARRANGEMENT." The two-paragraph letter stated:

> This letter will confirm that as of 28 May 1986, WERSI Chicago, Inc., is entrusted with the Exclusive Importing rights, the Exclusive Assembling rights, and the Exclusive Distributing and Selling rights in the USA for the WERSI Brand—Assembled Organ Line.
>
> This confirmation does not cancel or modify in any way any rights conveyed by any Agreements between the Parties.

Plaintiff's Ex. 6. The district court did not discuss the significance or existence of this letter.

### B. *State Common Law Fraud Claims*

The district court found that, as a matter of law, Mr. Ryan could not have justifiably relied upon any alleged misrepresentations by Wersi–Germany that he had been granted an enforceable exclusive rights contract. The district court noted that Mr. Ryan was an experienced business consultant entering a complex international business deal, was aware that an English–German language barrier existed, and was aided by counsel. Consequently, the court concluded that Mr. Ryan could not have justifiably relied upon

unsupported statements that significantly altered previous written agreements with Wersi–Germany. Mem. Op. at 17.

The district court also rejected Mr. Ryan's common law fraud claim that Wersi–Germany had misrepresented the profitability of WEI. The court noted that, prior to signing the purchasing agreement, Mr. Ryan had received financial statements clearly indicating company losses. The court also noted that Mr. Ryan testified in his deposition that he had a business degree and that he could understand financial statements. Similarly, the court found that, as a matter of law, Wersi–Germany had not made legally significant fraudulent representations to Mr. Ryan involving securing a letter of credit for the 1986 WEI stock purchase. The district court again based this determination on a finding that, even if representations had been made, Mr. Ryan could not have reasonably relied upon such unsupported assertions.

Ryan's initial complaint also alleged that Wersi–Germany had violated the Illinois Consumer Fraud Act. The district court summarily dismissed this claim under established Illinois case law that required proof of public injury or an effect on consumers generally. Mr. Ryan argued that, although the case law did impose this requirement, the statute itself did not. The district court, however, followed Illinois case law precedent. Subsequent to the dismissal, the Illinois state legislature amended the statute to state expressly that there is no proof of public injury requirement. Thereafter, Mr. Ryan renewed this claim to the district court. The court concluded then that the statutory amendment was not retroactive and that the claim had been properly dismissed.

### C. *Federal Securities Fraud*

The district court also found that, as a matter of law, Mr. Ryan could not prevail under § 10(b) of the Securities Exchange Act or under Rule 10b–5 of the Securities Exchange Commission. Mr. Ryan claimed that Wersi–Germany had misrepresented the profitability of its subsidiary, WEI, and had promised to grant him the exclusive distributorship rights he sought if he purchased the securities. The district court rejected this

claim because Mr. Ryan had been furnished with written disclosures regarding WEI's profitability, and because several of the written proposals that Mr. Ryan actually signed were inconsistent with exclusive distributorship rights. Consequently, the district court found that any of Wersi–Germany's oral representations were not material.

### D. *Civil RICO*

Finally, Mr. Ryan alleged that, by fraudulently conveying his exclusive distribution rights to other parties, Wersi–Germany had violated the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 28 U.S.C. § 1961 et seq. (1988). The district court summarily concluded that, because the alleged oral contract conveying exclusive rights to Mr. Ryan was unenforceable, Wersi–Germany could not have violated RICO as alleged. The court made no further findings on this claim.

### III

### ANALYSIS

■ We review a district court's grant of summary judgment de novo. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Aetna Casualty & Surety Co. v. Chicago Ins. Co.,* 994 F.2d 1254, 1256 (7th Cir.1993). In order to affirm, we must conclude that when all the evidence presented is taken in the light most favorable to Mr. Ryan, the non-movant, no genuine issue of material fact is in dispute. *See* Fed.R.Civ.P. 56(c); *Anderson v. Stauffer Chem. Co.,* 965 F.2d 397, 400 (7th Cir.1992). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). In reviewing evidence opposing a motion for summary judgment, the court is not obliged to entertain a "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). With these standards in mind, we now address each of Mr. Ryan's contentions.

### A. *Breach of Contract*

The district court based its rejection of Mr. Ryan's breach of contract arguments on the fact that Mr. Ryan produced no evidence of an agreement with terms that were certain enough to be enforceable. Mr. Ryan first argues that the district court erred in concluding that there is no genuine issue of fact as to whether, in 1984, Wersi–Germany orally granted him enforceable exclusive distributorship rights for pre-assembled Wersi instruments in the United States. Alternatively, Mr. Ryan argues that, even if the oral contract was not enforceable in 1984, the 1986 WEI stock purchase made Wersi–Germany's promises to him enforceable. In response, Wersi–Germany maintains that there is no evidence that it entered into any distributorship agreement with Mr. Ryan. Further, submits Wersi–Germany, any evidence that arguably does support such an agreement fails to satisfy the Statute of Frauds writing requirement.

■ Although the district court set forth the factual context of Mr. Ryan's dispute in some detail, one matter gives us significant pause. In response to Wersi–Germany's denial of contractual liability, Mr. Ryan invites our attention to the February 23, 1987 letter, in which Henningsen acknowledged that as of May 28, 1986, Mr. Ryan had the "Exclusive Distributing and Selling rights in the USA of the WERSI Brand—Assembled Home Organ Line." Plaintiff's Ex. 6. Specifically, Mr. Ryan argues that the letter was "a writing in confirmation of the contract and sufficient against the sender" to satisfy the Illinois Statute of Frauds. *Klockner, Inc. v. Federal Wire Mill Corp.,* 663 F.2d 1370, 1376 (7th Cir.1981); *see also* Ill.Rev.Stat. ch. 26, § 2–201(2). Mr. Ryan had submitted this letter into the record both with his original and with his amended pleadings. Additionally, he referred to the letter in ¶ 22 of his affidavit in opposition to summary judgment. R.70 at 5. However, the district court did not discuss this letter in its opinion. The difficulty created by the failure of the district court to deal with this letter is compounded by the ambiguity of the parties' appellate briefs. It is not our obligation to scour the

record to make a case for a party. *Marshall v. Allen*, 984 F.2d 787, 793 n. 3 (7th Cir.1993). However, we have examined carefully the record to ensure that there is no genuine issue of triable fact. We begin our review at the most troublesome point, the letter of February 23.

In the record that was before the district court, Wersi–Germany, in a memorandum in reply to Mr. Ryan's opposition to summary judgment, had responded directly to the letter's claimed significance. Specifically, Wersi–Germany stated that

> the only contract which granted any 'exclusive' rights to any plaintiff was the intercompany agreement of May 28, 1986 between Wersi/USA [WEI], which is not a party to this suit, and Wersi/Chicago.
>
> . . . .
>
> [T]hat letter does nothing more than confirm the exclusivity provisions of the distribution and marketing arrangement embodied in the May 28, 1986 intercompany agreement between Wersi/Chicago and Wersi/USA [WEI].

R.73 at 5, 11. Notably, on May 28, 1986, WEI and Wersi/Chicago (a wholly owned subsidiary of ROI and a named plaintiff) did execute an "Intercompany Agreement" that discussed a distributorship agreement.

Wersi–Germany has argued repeatedly in both the district court pleadings and now on appeal that WEI is not a subsidiary of Wersi–Germany. Rather, submits Wersi–Germany, WEI is an entirely separate enterprise owned by a Swiss company, Adrevi (and now owned twenty percent by Mr. Ryan). Thus, contends Wersi–Germany, any agreement between Mr. Ryan and WEI is irrelevant to Wersi–Germany's contractual liability and to this lawsuit because WEI is not named as a defendant. Even giving Wersi–Germany's arguments full benefit, it never offers any explanation why Wersi–Germany would be "confirming" an agreement to which it is not party. The letter from Wersi–Germany does not mention WEI, is on Wersi–Germany letterhead and is signed by an officer of the German company. Further, the letter discusses "[e]xclusive [i]mporting rights." It would be odd for a United States company to arrange an "importing" contract with another United States company. This import language, however, would be consistent with an agreement between a United States company and a German company. We also note that Wersi–Germany's insistence that Adrevi is the parent corporation of WEI, although technically accurate, is somewhat disingenuous. Adrevi is a Swiss holding company that is wholly owned by Wersi–Germany.

Because we must take all reasonable inferences in favor of Mr. Ryan, we shall assume that Wersi–Germany was a party to the February 23 letter and that the requirements of the Statute of Frauds are fulfilled.[1] Nonetheless, to defeat the summary judgment motion, Mr. Ryan still must show that this confirmation letter evidences that the parties had agreed on contract terms that are not too ambiguous or too uncertain to be legally enforceable. Specifically, in order to raise a genuine issue of triable fact and foreclose summary judgment, the letter must be sufficiently certain to establish an intent to be bound and must "express the substance of the contract with reasonable certainty." *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1182 (7th Cir.1991).

Mr. Ryan argues that the Uniform Commercial Code (UCC), as adopted in the Illinois Code, allows courts to supply the missing terms, which the district court found, as a matter of law, bar enforcement of the 1984/1986 agreement. Mr. Ryan is correct that, when applicable, the UCC controls contract interpretations in Illinois and courts may imply reasonable contract terms for the parties. *See* Ill.Rev.Stat. ch. 26, § 2–306 (1963); *Monetti*, 931 F.2d at 1178. The UCC does recognize generally that courts may imply reasonable price terms and that all contracting parties are bound by the obligations of good faith in their commercial relations. *See Selcke v. New England Ins. Co.*, 995 F.2d 688 (7th Cir.1993) (the duty of good faith is

---

**1.** On appeal, Mr. Ryan also alleges that the district court erred in rejecting his partial performance defense to the Statute of Frauds bar. Because we accept the February 23 letter as sufficient to satisfy the Statute of Frauds for purposes of reviewing this summary judgment order, we do not reach this point.

read into all Illinois contracts as a matter of law) (citing *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.*, 112 Ill.2d 196, 97 Ill.Dec. 415, 418, 492 N.E.2d 1288, 1291 (1986)). However, these are broad pronouncements that allow courts to fill in gaps when parties that clearly intend to be bound do not draft their agreements with legal precision.[2] It is universally recognized that courts are without power to write an entire contract. While the present transaction is essentially a contract for the sale of goods[3] and is governed by the UCC, it is clear that an unbroken line of Illinois cases holds specifically that, without any sales quota or durational terms, a distributorship agreement lacks mutuality and thus is not enforceable. *O'Neil and Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill.App.3d 11, 8 Ill.Dec. 78, 80, 365 N.E.2d 316, 318 (1977); *Kraftco Corp. v. Kolbus*, 1 Ill.App.3d 635, 274 N.E.2d 153 (1971).[4] "It has long been the holding of the Illinois courts that where an executory contract fixes no time for its operation, it is terminable at the will of either party." *Kraftco*, 274 N.E.2d at 156; *see also Borowski v. DePuy, Inc.*, 850 F.2d 297, 304 (7th Cir.1988) ("distributorship agreement of indefinite duration is an at-will contract under Illinois law"); *Magid Mfg. Co. v. U.S.D. Corp.*, 654 F.Supp. 325, 333 (N.D.Ill.1987) ("Under Illinois law, terms such as duration and sales quotas are considered essential terms of an agreement between a manufacturer and distributor."). Even if we impute the duty to act in good faith into the 1984/1986 agreement, such an obligation is still "too indefinite and uncertain to be an enforceable standard." *Kraftco*, 274 N.E.2d at 156. Thus, in order to defeat the summary judgment order, Mr. Ryan must offer us more than a "metaphysical doubt" that there was an agreement between the parties on the terms of the contract.[5]

2. Mr. Ryan also asserts that his June 1986 purchase of $500,000 in WEI stock was consideration supporting an enforceable contract with Wersi–Germany. The parties do not agree upon the facts here, and there is no evidence, beyond Mr. Ryan's assertions, to support the contention that Wersi–Germany ever proposed or intended that the WEI stock purchase would relate to a distributorship agreement between Mr. Ryan and Wersi–Germany. Accordingly, the assertions that Mr. Ryan makes regarding Wersi–Germany's involvement in the WEI stock purchase are more appropriately addressed in our discussion of Mr. Ryan's general fraudulent misrepresentation claims.

3. The transaction may more accurately be characterized as a "mixed" contract because the parties contracted for both the sale of goods and the sale of distribution rights. Under Illinois law, to determine whether the UCC governs in such cases, we look to the "predominant purpose" of the contract. *Monetti*, 931 F.2d at 1184 (quoting *Yorke v. B.F. Goodrich Co.*, 130 Ill.App.3d 220, 85 Ill.Dec. 606, 608, 474 N.E.2d 20, 22 (1985)); *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1153 (7th Cir.1989) (same). We believe that the present contract can fairly be characterized as predominantly a sale of goods.

4. In the alternative, Mr. Ryan argues that the district court erred in characterizing his claim as an alleged contract between a distributor and a manufacturer. Instead, argues Mr. Ryan, the nature of the relationship he had with Wersi–Germany throughout their negotiations and their alleged contracting was more that of joint venturers than that of distributor to manufacturer. Mr. Ryan cites *O'Connell v. Pharmaco*, 164 Ill. App.3d 68, 115 Ill.Dec. 277, 517 N.E.2d 688

(1987) for the proposition that a joint venture may be inferred from the surrounding circumstances in a relationship and that such an inference is generally an issue of fact. Further, submits Mr. Ryan, under Illinois law, a joint venture agreement may be enforceable without a specific durational period. *See id.* We cannot accept Mr. Ryan's attempt to recharacterize an agreement that he himself previously and consistently referred to as an exclusive *distributorship* agreement. Moreover, under Illinois law, "a joint venture must include a community of interest between the parties; a propriety interest in subject matter; the right of joint control over the venture; and sharing of both profits and losses." *Pros v. Mid–America Computer Corp.*, 142 Ill. App.3d 453, 96 Ill.Dec. 572, 583, 491 N.E.2d 851, 862 (1986). Given the continued references to exclusive distribution rights in the correspondence between Mr. Ryan and Wersi–Germany, no evidence that Mr. Ryan had the authority to exercise any control over the Wersi enterprise, and the pre-existing technology (already being marketed in unassembled kits), this argument is without merit.

5. Mr. Ryan also argues that the district court erred in summarily rejecting his theory of promissory estoppel. Mr. Ryan cites *Derby Meadows Util. v. Inter–Continental, Real Estate*, 202 Ill. App.3d 345, 147 Ill.Dec. 646, 655, 559 N.E.2d 986, 995 (1990), as authority that the issue of promissory estoppel should have been sent to a jury in his case. We do not read *Derby Meadows* so broadly. Wersi–Germany correctly notes that in *Derby Meadows* the reliance was clearly invited and foreseeable. Mr. Ryan has failed to make such a showing. *See Simmons v. John F. Kenne-*

■ It is clear from Mr. Ryan's Local Rule 12(N) statement of proposed findings of fact that he believes that, on or about May 28, he entered into a binding contract with Wersi–Germany, which gave him exclusive distribution rights to pre-assembled Wersi instruments in the United States. Mr. Ryan asserts that these rights were created by a stock purchase option given to him by Wersi–Germany on May 28, 1986. Plaintiff's Ex. 33. While the copy of Exhibit 33 that Mr. Ryan submitted to the record is not legible in its entirety, it is clearly a proposal from Wersi–Germany. The proposal does offer Mr. Ryan a twenty percent interest in the stock of WEI and was signed by one of the Franz brothers. It is also clear from the record that the result of the May 28 proposal was an agreement between WEI and Mr. Ryan executed on June 20. Pursuant to this agreement, Mr. Ryan purchased twenty percent of the outstanding WEI stock. The agreement also provided in ¶ 9 that:

> Simultaneously with the execution of this Agreement, Seller and wholly owned subsidiary of Buyer are entering into a distribution and marketing agreement relating to Seller's products.

Defendant's Ex. 57 at 3, ¶ 9. Standing alone, this paragraph does not provide sufficient specificity to permit a court to imply a distribution agreement under Illinois law. Indeed, a court would have to imply *all* of the contract terms.

The only other document in the record that is signed by either WEI or Wersi–Germany and arguably sets forth enforceable contract terms is the May 28 Intercompany Agreement between Mr. Ryan and WEI. Although the Intercompany Agreement does not refer explicitly to exclusive rights, it does set forth in some detail minimum purchase quantities that Mr. Ryan was to make over the course of the first four years of the agreement. The agreement further sets forth a method to project minimum purchase requirements beyond the first four years

based upon actual orders during that time period. Mr. Ryan perhaps could argue that the February 23 confirmatory memorandum refers to the May 28 Intercompany Agreement signed by Gross. Such an argument may give rise to a genuine issue of triable fact as to whether Wersi–Germany breached that agreement. However, Mr. Ryan expressly asserts in his reply brief that we are not to look at the Intercompany Agreement and goes to great lengths to invite our attention to other oral dealings. Appellant's Reply Brief at 7–8. Accordingly, despite having overlooked the February 23 "confirmatory memorandum," the district court was on solid ground when it ruled that, as a matter of law, any agreement between Mr. Ryan and Wersi–Germany was too vague to be legally enforceable.[6]

### B. *Fraud Claims*

■ The gist of Mr. Ryan's fraud claims is that, if the stock purchase was not valid consideration for the exclusive distributorship rights to the pre-assembled Wersi instruments, then Wersi–Germany fraudulently induced him to make the purchase. Additionally, Mr. Ryan contends that the failing financial condition of WEI was fraudulently concealed and that the district court erred in finding, as a matter of law, that he could not have justifiably relied upon representations made by WEI and Wersi–Germany officers about the financial health of WEI. Justifiable reliance is an essential element of common law fraud in Illinois. *Connor v. Merrill Lynch Realty, Inc.*, 220 Ill.App.3d 522, 163 Ill.Dec. 245, 252, 581 N.E.2d 196, 203 (1991); *Seefeldt v. Millikin Nat'l Bank of Decatur*, 154 Ill.App.3d 715, 107 Ill.Dec. 161, 506 N.E.2d 1052 (1987). "[I]t is only where parties do not have equal knowledge or means of obtaining knowledge of the facts which are allegedly misrepresented that a person may justifiably rely on them." *Chicago Export Packing Co. v. Teledyne Indus.,*

---

*dy Medical Ctr.*, 727 F.Supp. 440, 443 (N.D.Ill. 1989) (to recover under a promissory estoppel theory in Illinois, plaintiff must allege an "unambiguous promise" and "expected and foreseeable" reliance on that promise).

**6.** Because we conclude that Wersi–Germany did not enter into an enforceable contract with Mr. Ryan, Mr. Ryan's allegation that Wersi–Germany violated RICO by conveying his distribution rights to others is without merit.

*Inc.*, 207 Ill.App.3d 659, 152 Ill.Dec. 639, 642, 566 N.E.2d 326, 329 (1990). Further, it is appropriate for the trial court to make a preliminary determination, on a motion for summary judgment, of whether the plaintiff can demonstrate justifiable reliance. *Connor*, 163 Ill.Dec. at 252, 581 N.E.2d at 203; *Chicago Export Packing*, 152 Ill.Dec. at 642–44, 566 N.E.2d at 329–31.

▮▮▮ After careful review of the record before the district court on summary judgment, we agree with the district court's determination that Wersi–Germany is entitled to judgment as a matter of law on Mr. Ryan's Illinois fraud-based claims. Similarly, materiality is an essential element of the misrepresentation claim that Mr. Ryan has raised under the federal securities laws. "[T]o say a fact is material is to say that a *reasonable* investor, knowing what the plaintiff knew, would have considered the information important in determining whether to buy or sell." *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir.1988) (emphasis in the original). A reasonable investor would not have considered Wersi–Germany's statements material in light of the written financial information that Mr. Ryan had been provided with prior to the WEI stock purchase. *See Astor ·Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540 (7th Cir.1990); *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir.1988) ("in the law of securities a written disclosure trumps an inconsistent oral statement"). Accordingly, for the reasons stated above, the district court correctly held that Wersi–Germany was entitled to summary judgment on the allegations regarding federal securities laws.

▮▮▮ Finally, Mr. Ryan again challenges the district court's summary disposition of his claim under the Illinois Consumer Fraud Act. He acknowledges that, in *A. Kush & Associates, Ltd. v. American States Insurance Co.*, 927 F.2d 929 (7th Cir.1991), this circuit held that the 1990 amendment to the Act is not retroactive. Nonetheless, Mr.

Ryan argues that the amendment was intended only to clarify the original intent of the Illinois legislature, i.e., that there never was a public injury requirement under the Act. Both this court and the Illinois courts have had occasion to revisit the question of retroactivity since *A. Kush.* Furthermore, both this court and the Illinois courts, which are controlling on questions of Illinois law, have held that the 1990 amendment to the Illinois Consumer Fraud Act did not effect a substantive change in the law. Rather, the amendment merely clarified that there never was a public injury requirement under the statute. *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 638 (7th Cir.1992); *Royal Imperial Group, Inc., v. Blumberg & Assocs., Inc.*, 240 Ill.App.3d 360, 181 Ill.Dec. 105, 108–09, 608 N.E.2d 178, 181–82 (1992). Because the district court dismissed the Illinois Consumer Fraud Act allegations on the sole rationale that Mr. Ryan failed to allege a public injury, a substantive review of this claim is not ripe for our attention. Therefore, we reverse the dismissal of the Illinois Consumer Fraud Act count and remand to the district court for findings in accord with this opinion.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed and remanded in part. The parties shall bear their own costs in this court.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.