NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued September 5, 2008
Decided December 1, 2008

Before

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-2898

| | |
|---|---|
| FE DIGITAL INVESTMENTS LIMITED, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 06 C 4807 |
| LYRIC HUGHES HALE, | Milton I. Shadur, *Judge.* |
| *Defendant-Appellant.* | |

**O R D E R**

FE Digital Investments Limited sued Lyric Hughes Hale for breach of contract and common law fraud when it learned that the financial statements attached to its agreement to purchase stock in Hale's company (China Online) were erroneous despite her representations that the statements contained no material inaccuracies. The district court granted summary judgment to FE Digital. Hale's appeal contends that summary judgment was inappropriate because she submitted evidence that FE Digital's reliance on the financial statements was unjustifiable in light of Hale's pre-purchase disclosures that

the statements had not been audited and "were not necessarily up-to-date." Because Hale's disclosures did not nullify the representations in the agreement that the financial statements were accurate, we conclude that this evidence does not create a triable issue of fact as to reliance. We also find that Hale has waived or forfeited her argument that FE Digital cannot recover on its fraud claim due to unclean hands by not raising it before the district court. Therefore, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

On September 18, 2001, Victor Chu, as Director of FE Digital, purchased shares of China Online for $1.5 million pursuant to a Subscription Agreement between FE Digital, China Online, and Hale. That agreement stated, in relevant part:

> Section 2.5 Financial Statements. The financial statements attached hereto as Exhibit 2.5 (the "Financial Statements") (i) do not contain or reflect any material inaccuracies or discrepancies, (ii) disclose a true and fair view of the financial position of the Company both as at 31 July 2001 and, (subject to changes required to reflect the normal day to day operation of the business of the Company between 1 August 2001 and the Closing Date, which operation has not resulted in the Company incurring any liabilities [A] other than in the normal course of business or [B] which may or could adversely effect the ability of the Company to carry on business or which if disclosed to the Investor would materially influence the Investors decision to invest in the Company), the Closing Date, and (iii) have been prepared in accordance with United States' generally accepted accounting principles and practice subject to the absence of footnote disclosures and to normal year-end adjustments. Other than (i) the amount of US$1,168,670.05 specified in the Financial Statements as "Total Accounts Payable," (as adjusted by virtue of the matters referred to in (ii) above of this Section 2.5) (ii) the amount specified in Section 5.1(b) of this Agreement, and (iii) the expenses specified in the Monthly Expense Summary (as defined below), there are no other debts or liabilities of the Company that will become due and owing prior to December 31, 2001.

Hale, the founder and CEO of China Online, executed the Subscription Agreement on behalf of China Online and in her individual capacity. Pursuant to the agreement, Hale produced a copy of China Online's July 31, 2001 financial statements. Hale testified in her deposition that she neither reviewed the actual numbers nor verified their accuracy with China Online's financial team. At some point before the purchase, Hale told Chu that "the

accounting in the company was not necessarily up-to-date" because China Online could not pay its accounting firm, and it had not been able to complete an audit.

After receiving and reviewing the financial statements, FE Digital entered into the agreement and purchased the shares. On November 5, 2001, China Online's new comptroller advised FE Digital that the numbers in the July 31, 2001 financial statements were "preliminary and unaudited and obviously have errors." These "errors" amounted to an overstatement of China Online's net asset value to the tune of $1.8 million. Although the financial statements produced as part of the Subscription Agreement represented that China Online's total equity as of July 31, 2001 was $688,355, it turned out that China Online's actual total equity as of that date was *negative* $1,089,184.

At the time she executed the Subscription Agreement, Hale also signed a letter of undertaking, in which she personally promised to sell the stock purchased by FE Digital for $1.5 million within eighteen months of the closing unless certain other events (such as the sale of China Online) occurred. Those other events did not occur and Hale, though she did try, did not find an investor to purchase FE Digital's stock. Hale contends that her efforts to find new investors were thwarted by Chu.

FE Digital filed suit against Hale, alleging three claims: (1) that Hale breached the Subscription Agreement when she provided inaccurate financial statements; (2) that Hale breached the letter of undertaking because she failed to sell FE Digital's shares for $1.5 million; and (3) that Hale committed common law fraud through her misrepresentations in the financial statements. The district court granted FE Digital's motion for summary judgment on the fraud claim and the claim relating to the breach of the Subscription Agreement, which entitled FE Digital to relief that rendered the remaining claim moot. Hale appeals.

## II. ANALYSIS

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to Hale, the non-movant. *Brademas v. Indiana Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004). The parties agree that Illinois law governs this dispute.

### A. Common Law Fraud Claim

Hale argues that summary judgment was inappropriate on the fraud claim because she raised a genuine issue of fact regarding Chu's reliance (and by proxy, FE Digital's) on the erroneous financial figures. Under Illinois law, in order for a plaintiff to prevail on a claim of fraudulent misrepresentation, he or she must establish the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008). A plaintiff must prove common law fraud with "clear and convincing evidence." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005).

In fraudulent misrepresentation cases, the reliance by the plaintiff "must be justified, i.e., he must have had a right to rely." *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). Although the question of whether a plaintiff's reliance was reasonable is usually a factual question left for the jury, "where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one for the court." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 819 (Ill. App. Ct. 1998).

The Subscription Agreement states that the attached financial statements did "not contain or reflect any material inaccuracies or discrepancies [and] disclose[d] a true and fair view of the financial position of the Company both as at 31 July 2001." Chu claims he believed this  representation that the numbers were accurate and relied on the accuracy of the financial statements when he agreed to buy the shares. Hale contends that Chu understood the company was in financial trouble and therefore Chu could not actually have relied on the financial statements. Her proof in support of this is her testimony that at some point before Chu's purchase of the shares, she told him "the accounting in the company was not necessarily up-to-date" because China Online could not pay its accounting firm, and had not been able to complete an audit. According to Hale, Chu assured her that an audit could be performed at a later date.

Hale makes no argument that the representations in the Subscription Agreement do not create a right to rely on the accuracy of the financial statements. Rather, Hale argues that Chu's reliance on those statements was unjustifiable in light of Hale's pre-purchase disclosures. "To find justifiable reliance, the court considers whether the party was reasonable in relying on his adversary's representation in light of the facts within his actual

knowledge and any he might have discovered by the exercise of ordinary prudence." *D.S.A Fin. Corp. v. County of Cook,* 801 N.E.2d 1075, 1081 (Ill. App. Ct. 2003). But the relying party must have knowledge of material facts. *See Miller v. William Chevrolet/GEO, Inc.,* 762 N.E.2d 1, 9 (Ill. App. Ct. 2001) ("The law will not allow a person to enter into a transaction with eyes closed to *material facts* and then claim fraud by deceit.") (emphasis added). So the question is whether Hale's disclosures informed Chu (or provided information that would put a reasonable person on notice) that contrary to the assertions in the Subscription Agreement, the financial statements were in fact completely erroneous. We do not think they do. Hale's disclosures–that the company's accounting was not up to date and that it had not been able to complete an audit–did not provide material facts that nullify the specific representations in the Subscription Agreement that the July 31, 2001 financial statements were accurate. Nor does Hale contend that Chu could have discovered the true financial health of the company himself. *Cf. Chicago Export Packing Co. v. Teledyne Indus., Inc.,* 566 N.E.2d 326, 329 (Ill. 1990) ("[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another.").

Hale also argues that Chu's claim of reliance is undermined by the fact that FE Digital (through Chu) continued to invest money in China Online even after Chu learned the July 31, 2001 financial statements were inaccurate. We acknowledge that FE Digital's behavior is somewhat odd but Hale cites no authority for the proposition that FE Digital's post-purchase actions (in November 2001) are probative of whether it relied on the financial statements in September 2001. *Cf. Miller,* 762 N.E.2d at 9 ("A plaintiff may not generally rely on representations made when the plaintiff has ample opportunity to ascertain the truth of the matter *before* acting.") (emphasis in original); *Duran v. Leslie Oldsmobile, Inc.,* 594 N.E.2d 1355, 1363 (Ill. App. Ct. 1992) ("The reasonableness of a plaintiff's reliance is determined at the time such plaintiff acts in reliance on the misrepresentation."). The undisputed facts demonstrate Chu's reliance on the financial statements attached to the Subscription Agreement was reasonable at the time he purchased the shares.

Hale's related argument that she did not intend to induce Chu to buy shares in reliance on the financial statements also fails. This argument is based solely on Hale's contention that Chu knew the financial statements were inaccurate, which in turn is based on Hale's disclosures. As stated above, those disclosures do not prove that Chu knew the financial statements were inaccurate. As the district court put it, Hale can find no solace in these disclosures for they "provide no insulation against such a marked violation of the

Agreement's representations and warranties."

### B.      Breach of Contract Claims

Hale's only argument regarding FE Digital's breach of contract claims is that FE Digital purposefully prevented her from selling its shares pursuant to her obligation under the September 2001 letter of undertaking. As a result, Hale argues, FE Digital should not be allowed to recover on its claim for breach of contract that arises from the letter of undertaking, or recover any damages resulting from Hale's breach of the Subscription Agreement. Both arguments fail.

We begin with the breach of contract claim relating to the Subscription Agreement. The problem with Hale's argument is that she did not raise it before the district court. It is well established that "an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal." *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008); *see also Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 629 n.4 (7th Cir. 1986) ("[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (quoting *Liberles v. County of Cook*, 709 F.2d 1122 (7th Cir. 1983). Hale admits she did not raise this argument in the district court and attempts to circumvent this problem by arguing (without explanation) that her case is an "exceptional one" in which "justice demands more flexibility." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir. 1977). But this case does not invoke that limited exception to the rule, and therefore, we find Hale either waived or forfeited this argument.

We turn to Hale's argument regarding the letter of undertaking. The district court denied as moot FE Digital's motion for summary judgment on its breach of contract claim relating to the letter of undertaking, and FE Digital has not appealed that ruling. Therefore, we need not consider whether FE Digital's actions prevent it from recovering on that claim.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.