492 S.E.2d 404

**The PLANTATION SHUTTER COMPANY, INC., Respondent,**

v.

**Ricky EZELL, Appellant.**

**No. 2724.**

Court of Appeals of South Carolina.

Submitted Sept. 9, 1997.

Decided Sept. 29, 1997.

476

Joseph L. Smalls, Jr., of Smalls Law Firm, Columbia, for Appellant.

Hardwick Stuart, Jr., and Deborah R. J. Shupe, of Berry, Adams, Quackenbush & Dunbar, Columbia, for Respondent.

GOOLSBY, Judge:

The Plantation Shutter Company, Inc. (seller) instituted this action against Ricky Ezell (buyer) to collect the balance owed on a contract for specially manufactured interior shutters sold to the buyer and installed in his home. The buyer answered and counter-claimed for breach of contract and breach of warranty. The master granted judgment to the seller and denied judgment to the buyer. The buyer appeals. We affirm.[1]

## FACTS

On May 30, 1994, the seller's representative met with the buyer to give him an estimate for interior window shutters for his new home. The representative left a proposed sales contract totaling $5,985.75 with the buyer. The contract did not contain any indication that time was of the essence, but approximated the time for performance at three to five weeks. In mid-June, the buyer returned the executed sales contract to the seller with the required partial payment.

Due to a delay in shipment of components, the seller experienced a slight delay in delivery of the shutters to the

---

1. Because oral argument would not aid the court in resolving these issues, we decide the case without oral argument pursuant to Rule 215, SCACR.

buyer's home. The seller gave the buyer a five per cent discount on the sales price because of this delay. In late July, the seller sent workers to the buyer's home to install the shutters.

The buyer was not satisfied with 12 of the 37 panels. The seller agreed to remake them. About one month later, the seller completed installation with the remade panels.

Following installation of the remade panels, the buyer's complaints prompted several meetings with the seller. The buyer also informed the seller he did not like the exposed hinges. To accommodate the buyer, the seller agreed to provide side strips to hide the hinges at no extra cost, make adjustments to the shutters where necessary, and further discount the contract price for a total discount of $800.00. The buyer and the seller executed an addendum dated September 13, 1994, concerning this additional work. Like the original contract, the addendum did not indicate time was of the essence, but estimated the time for performance at two weeks. At this same time, the buyer asked the seller for an estimate on shutters for the third floor of his home.

Pursuant to the addendum, the seller specially manufactured side strips for the buyer to hide the hinges. The seller made several attempts to schedule an appointment to install them and make adjustments to the shutters already in place, but the buyer never responded. On October 6, 1994, the seller sent installers to the buyer's home to perform the remainder of the work, but the buyer denied them access.

I.

The buyer first argues the master erred by applying the Uniform Commercial Code (UCC) to the contract.

■ In considering whether a transaction that provides for both goods and services is a contract for the sale of goods governed by the UCC, courts generally employ the predominant factor test. *Ranger Constr. Co. v. Dixie Floor Co.*, 433 F.Supp. 442 (D.S.C.1977). Under this test, if the predominant factor of the transaction is the rendition of a service with goods incidentally involved, the UCC is not applicable. *Id.* at 445. If, however, the contract's predominant factor is the sale of goods with labor incidentally involved, the UCC applies. *Id.* at 444. In most cases in which the contract calls for a

combination of services with the sale of goods, courts have applied the UCC. James J. White & Robert S. Summer, *Uniform Commercial Code* § 1-1, at 4 (4th ed. 1995).

In *Kline Iron & Steel Co. v. Gray Communications Consultants, Inc.,* 715 F.Supp. 135 (D.S.C.1989), the district court determined the UCC applied to a transaction involving the construction of a television tower. The contract neither mentioned any services nor quoted a separate price for them, although some service would necessarily be involved in erecting the television tower. The contract referred to the purchaser of the tower as "[b]uyer, a term indicative of a transaction for the sale of goods." *Id.* at 140. Moreover, the warranty language was that of a sales contract. *Id.*

■ Here, the contract does not provide for installation charges. The document is entitled "Terms of Sale." By signing the contract, however, the "customer" authorized the "sales representative" to do the "work" as specified. Although the term "work" sounds more like a service contract term, looking at the contract as a whole, it is predominantly a contract for the sale of goods; therefore, we must apply the UCC. *See J. Lee Gregory, Inc. v. Scandinavian House,* 209 Ga.App. 285, 433 S.E.2d 687 (1993) (stating that when a contract for the purchase of replacement windows included a lump sum charge, and approximately two-thirds of that cost was for the windows, even though a substantial amount of service was necessarily involved, the contract was for the sale of goods); *Pittsley v. Houser,* 125 Idaho 820, 875 P.2d 232 (App.1994) (purchasing carpet by contract for a lump sum charge for the carpet and installation, when the particular carpet was the focus, not who installed it, created a contract for the sale of goods); *Riffe v. Black,* 548 S.W.2d 175 (Ky.Ct. App.1977) (finding that when a contract for the purchase of a swimming pool included services necessary to ensure the goods were merchantable and fit for the ordinary purpose, the contract was for the sale of goods); *Mennonite Deaconess Home & Hosp., Inc. v. Gates Eng'g Co.,* 219 Neb. 303, 363 N.W.2d 155 (1985) (finding that when a contract was for the purchase of a particular roofing material which was specially manufactured and supplied by seller, the contract was for the sale of goods); *Meyers v. Henderson Constr. Co.,* 147 N.J.Super. 77, 370 A.2d 547 (1977) (contracting for the purchase and installation of prefabricated overhead doors, which included a

lump sum charge for the equipment and installation, made it a nondivisible mixed contract, and the contract was for the sale of goods because the service element did not dominate the subject matter, even though the overhead doors were useless without the performance of installation services).

## II.

The buyer argues the master incorrectly applied the UCC in finding the buyer accepted the goods and awarding the seller the contract price as damages.

An ineffective rejection by the buyer is an acceptance by the buyer. S.C.Code Ann. § 36–2–606(1)(b) (1976). Therefore, we must consider whether the buyer effectively rejected the shutters. Section 36–2–602(1) provides that a buyer must reject goods "within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." S.C.Code Ann. § 36–2–602(1) (1976).

■ In construing section 36–2–602(1), our courts have determined that for a rejection of goods to be effective, a buyer must notify a seller in writing. *Southeastern Steel Co. v. Burton Block & Concrete Co.,* 273 S.C. 634, 258 S.E.2d 888 (1979); *American Fast Print Ltd. v. Design Prints of Hickory,* 288 S.C. 46, 339 S.E.2d 516 (Ct.App.1986).

■ The buyer does not dispute that he did not send written notification of rejection to the seller. Instead, the buyer asserts that the seller's "own employees communicated, in writing, to the [seller] the level of dissatisfaction that the [buyer] expressed," and that this writing satisfies the writing requirement. We disagree.

■ As we just noted, section 36–2–602 requires the *buyer* to notify the seller in writing. The buyer simply failed to do this here. Moreover, notice of facts constituting a breach is not the same as notice that the buyer considers those facts to be a legal breach. *See Southeastern Steel Co. v. W.A. Hunt Construct. Co.,* 301 S.C. 140, 390 S.E.2d 475 (Ct.App.1990). The buyer's dissatisfaction did not put the seller on notice of the buyer's claim that he considered the source of his dissatisfaction a breach. The buyer negotiated discounts due to the delay and alterations due to non-conformities; then the buyer signed a second agreement to this effect. The buyer also asked for an estimate on the cost to purchase and install

blinds on the third floor of the house. The seller, then, had no reason to believe the buyer considered the delay and non-conformities to be a legal breach.

Because the buyer failed to notify the seller in writing that he was rejecting the goods, he did not effectively reject the goods, and he thereby accepted them. Because we hold that the buyer legally accepted the shutters, we find the court correctly awarded the contract price as the measure of damages. S.C.Code Ann. § 36-2-709 (1976).[2]

**AFFIRMED.**

CURETON and CONNOR, JJ., concur.

---

**2.** Because we find there was no rejection by the buyer, we do not address the buyer's contention that the seller failed to cure the nonconforming offer. *See Advance Int'l, Inc. v. North Carolina Nat'l Bank of S.C.,* 320 S.C. 533, 466 S.E.2d 367 (1996) (in which the supreme court vacated an opinion by the court of appeals to the extent certain issues were addressed in dicta).

We also do not address the buyer's other contentions concerning breach of an implied warranty of workmanship and the applicability of the Magnuson–Moss Act, 15 U.S.C. § 2301(10), because although the buyer presented these issues to the master, the master did not rule on them, and the buyer never made a motion to amend or alter judgment pursuant to Rule 59(e). These issues are therefore not preserved for appellate review. *Degenhart v. Knights of Columbus,* 309 S.C. 114, 420 S.E.2d 495 (1992).