SECOND DIVISION

November 27,2001

No.  1-00-4255 ) Appeal from the 

OTHA MILLER, ) Circuit Court of 

) Cook County

Plaintiff-Appellant, )

)

)

)

WILLIAM CHEVROLET/GEO, INC. ) Honorable 

and HFC AUTO CREDIT CORP. ) Barbara A. McDonald

) Judge Presiding

Defendant-Appellee. )

OPINION UPON DENIAL OF REHEARING 

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Plaintiff Otha Miller appeals from an order of the Cook County circuit court granting summary judgment in favor of defendants William Chevrolet/GEO, Inc. (William Chevrolet) and HFC Auto Credit Corp. (HFC).
(footnote: 1)  Miller's lawsuit arose from allegedly fraudulent misrepresentations made by William Chevrolet during the sale of a used Nissan Altima.  The circuit court found that Miller suffered no legally cognizable injury and thus failed to establish a 
prima facie
 case for either his common law fraud claims or for his claims under Section 2 of the Consumer Fraud and Deceptive Business Practices Act.  815 ILCS 505/2 (West 

No. 1-00-4255

1998).  On appeal Miller argues that the circuit court erred because Illinois law recognizes diminished value as a compensable injury.  Miller also contends that he has raised a material question of fact on all other elements of his statutory and common law fraud claims.  For the reasons set forth below, we reverse in part, affirm in part, and remand for further proceedings.

BACKGROUND

Miller filed his original complaint on August 26, 1999.  On January 21, 2000, the trial judge dismissed this complaint without prejudice in response to Section 2-615 Motions to Dismiss timely filed by both defendants.  735 ILCS 5/2-615 (West 1998).   The matter went to arbitration in March, 2000 and the defendants were granted an award.  As permitted under Supreme Court Rule 93 (166 Ill. 2d R. 93), Miller rejected the arbitrator's award and on April 10, 2000 he filed an amended complaint against both defendants.  William Chevrolet filed a timely motion for summary judgment which the trial court granted as to both William Chevrolet and HAFC in December, 2000.  735 ILCS 5/2-1005 (West 2000).

Attached to defendant's motion for summary judgment was plaintiff's deposition including exhibits.  From that deposition, a picture of the transaction between William Chevrolet's salespeople and Miller emerges.  It is uncontested that in late February 1998, Miller went into the William Chevrolet dealership and began looking at used vehicles.  Miller admits that he had not dealt with defendant dealership on any prior occasion and called his decision to look at their cars "random."  After discussing available cars and financing with William Chevrolet personnel, Miller took a Nissan Altima (different than the one he eventually purchased) home for the night as a test drive.  The following day, Miller returned the car to William Chevrolet and began discussions about the 1997 Nissan Altima that he ultimately purchased.  

During his deposition, Miller alleged that William Chevrolet's salesperson told him that the 1997 Altima was "executive driven" and that it was a "great car."  In its response to interrogatories, William Chevrolet stated that the only representation its salespeople ever attached to the vehicle was "used."

In his deposition, Miller stated that he interpreted the phrase "executive driven" to mean that the car had previously been used by high ranking employees of either Nissan or William Chevrolet and had therefore been well cared for.  It is not disputed that the Altima had not been driven by these executives and that William Chevrolet had recently purchased the vehicle from Enterprise Leasing Corporation. 

Miller admitted to knowing at the time that the Altima was used (he was buying a 1997 model year car in 1998) but claims he did not know, nor did he inquire further, about the Altima's history or previous owner.  

Upon his decision to purchase the Altima, Miller was presented a number of documents to sign.  At his deposition, Miller recognized his signature on a number of exhibits, including a retail installment contract, an odometer disclosure form, a handwritten vehicle sales order, and a typed vehicle sales order.  Although Miller did not remember in detail each form he signed, he did recall that he was neither pressured nor rushed to complete the paperwork.

From the record it appears that these documents describe the car in question as a 1997 Nissan Altima and all contain plaintiff's signature and are dated February 27, 1998.  The retail installment contract contains the typed word "used" in a box designated "New or Used."  Both vehicle sales orders contain checks in the "Used" box of a section which also contains boxes titled "New" and "Demo."  None of these documents make reference to the car's prior owner, Enterprise Leasing Company. 

During his deposition, Miller was also shown an Indiana certificate of title, the front of which lists "ENTERPRISE LSG CO. OF INDIANAPOLIS" as the original owner.  The back of this title contains a section labeled "First Re-Assignment By Registered Dealer Only" under which William Chevrolet is listed as dealer and Otha Miller is listed as purchaser.  Miller acknowledged signing every document he was asked to sign, including the title.  Next to the purchaser's signature block on the back of the title is a date of sale box in which "3/25/98" is written. 

After the sale to Miller, William Chevrolet assigned the retail installment contract to HAFC Miller asserted claims against HAFC in its original and amended complaints.

In response to defendant's motion for summary judgment, Miller submitted a summary of proposed testimony from an opinion witness who was to address the financial significance of a car's history of rental use.

Miller admits having driven the Altima since its purchase without any serious malfunction.  Based primarily on this admission, the trial court granted defendants' motions for summary judgment, finding that Miller's submissions did not raise any legally cognizable injury.  This appeal followed.

ANALYSIS

I.    Standard of Review

Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits illustrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Largosa v. Ford Motor Co.
, 303 Ill.App.3d 751, 753, 708 N.E.2d 1219, 1221 (1999).  When examining a motion for summary judgment, the court must consider "all the evidence before it strictly against the movant ... and liberally in favor of the nonmovant."  
Largosa
, 303 Ill. App. 3d at 753, 708 N.E.2d at 1221.  This court reviews summary judgment orders 
de novo
.  
Largosa
, 303 Ill. App. 3d at 753, 708 N.E.2d at 1221.  An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law.  
In re Estate of Herwig
, 237 Ill. App. 3d 737, 604 N.E.2d 1164 (1992).

II  Fraudulent Misrepresentation

Miller contends that the trial court erred in granting summary judgment on both his common law and statutory fraudulent misrepresentation claims.  We agree.  We first consider whether summary judgment is appropriate for Miller's common law fraud claims. 

A.  Common Law Fraud

Fraud has been said to comprise anything calculated to deceive and may consist of a single act, a single suppression of truth, suggestion of falsity, or direct falsehood, innuendo, look or gesture.  
Russow v. Bobola
, 2 Ill. App. 3d 837, 841, 277 N.E.2d 769, 771 (1972).  The elements of common law fraud are (1) false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement.  
Connick v. Suzuki Motor Co.
 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996).  In analyzing the appropriateness of summary judgment in this case, we will consider each element in turn. 

1.  False statement of Material Fact

This element encompasses three requirements: the defendant must (1) make a misrepresentation, (2) it must involve a fact and (3) the misrepresentation must be material.  Miller contends that William Chevrolet told him that the Altima was "executive driven" and that this characterization was false and affirmatively misrepresented the car's true history as a rental vehicle.  Defendant offered no evidence that the car was ever driven by executives of either William Chevrolet or Nissan.  Miller has thus raised a triable question on the misrepresentation requirement of this element.

We conclude that a material controversy also exists on the requirement that defendant's misrepresentation involve a fact.   Defendant argues that the designation "executive driven" has no clear meaning and at most is "puffing."  Puffing is defined as a "bare and naked statement as to value" of a product and is considered a nonactionable assertion of opinion.  
People ex rel. Hartigan v. Maclean Hunter Publishing Corp.
, 119 Ill. App. 3d 1049, 1059, 457 N.E.2d 480, 487 (1983) (quoting 
Duhl v. Nash Realty Inc.
, 102 Ill. App.3d 483, 489, 429 N.E.2d 1267 (1981)).   Statements of existing facts or comments that ascribe specific virtues to a product are not generally considered puffing and may be the subject of a fraud claim. 
Totz v. Continental Du Page Acura
, 236 Ill. App. 3d 891, 904, 602 N.E.2d 1374, 1382 (1992).  Whether a representation will be considered one of opinion or fact depends upon the circumstances of the case.  
Totz
, 236 Ill. App. 3d at 904, 602 N.E.2d at 1382.

We find that a salesperson's description of a used car's as "executive driven" could be viewed as a statement about an existing factual situation intended to conjure a specific, factual idea about the car's history in the mind of a typical consumer.  Unlike phrases such as "expert workmanship," or "magnificent" which courts have found to be mere statements of value 
(Breckenridge v. Cambridge Homes, Inc.
, 246 Ill. App. 3d 810, 823, 616 N.E.2d 615, 623 (1993)), "executive driven" is sufficiently susceptible of interpretation as a factual description of a car's history to defy our characterizing it as "puffing" as a matter of law.
  Miller has therefore put forward sufficient question as to the categorization of "executive driven" to survive summary judgment on this requirement of the first element of fraud.

Finally, a misrepresentation is "material" if the plaintiff would have acted differently had he been aware of it, or if it concerned the type of information upon which he would be expected to rely when making his decision to act. 
Mackinac v. Arcadia National Life Insurance Co.
, 271 Ill. App. 3d 138, 141, 648 N.E.2d 237, 239 (1995).  Plaintiff's deposition indicated that he did not want to purchase a car previously used for rentals and that he would not have purchased the Altima in question had he known of its history.  Plaintiff's opinion witness also indicated that purchasers who request or knowingly accept cars previously used as rentals expect a reduction in price as a result.  Furthermore, the fact that other states demand that rental history be divulged in writing to prospective car buyers reveals that this is precisely the type of information that people use as the basis for purchasing decisions.  
See e.g., Mass.
 Regs. Code tit. 940, § 5.04(2)(c) (1993); KAN. STAT. ANN. §50-659(2).

2.  Knowledge of Falsehood

That the defendant know of the falsehood is also an element of common law fraud.  In the instant case, defendant does not dispute that its salespeople knew that the car had been titled to Enterprise Rental prior to the sale to Miller.  To the extent that "executive driven" can be considered a statement of existing fact, defendant knew it to be a false representation about the car in question.

3.  Intent to Induce Reliance

Miller alleges that he was told the car was "executive driven" in conjunction with being told that it was a "great car" and defendant offers no suggestion why the salesperson used the phrase "executive driven" other than to explain the car's history in an effort to get Miller to buy it.  The particular phrase "executive driven" logically appears to have been employed to encourage the purchase.

Defendant counters that there was no showing that the alleged comment was intended to induce plaintiff to purchase the Altima.  Defendant relies on 
Mackinac v. Arcadia National Life Insurance Co.
, 271 Ill. App. 3d 138, 648 N.E.2d 237 (1995), in which a car buyer sued the seller dealership for fraud in connection with the credit life insurance policy the dealership sold her.  The life insurance company ultimately denied coverage under the policy because the policy terms prohibited payment for the plaintiff's pre-existing condition. The 
court held that the dealership's failure to provide the plaintiff with a copy of the policy's restrictions was not actionable because the dealership 
had no reason to suspect that the restriction would be of concern to her.  
Mackinac
, 271 Ill. App. 3d at 142-43, 648 N.E.2d at 240.  In the absence of such knowledge, "defendants could not have affirmatively intended that plaintiff rely upon their alleged failure to disclose the exclusion."  
Mackinac
, 271 Ill. App. 3d at 142-43, 648 N.E.2d at 240.  

In this case, however, both Miller's opinion witness and common sense tell us that used car dealerships have reason to know that the history of a car is of concern to purchasers.  This is all the more true when the history involves previous service as a taxi or rental vehicle.  Unlike 
Mackinac
, Miller does not merely claim that William Chevrolet failed to disclose the Altima's history but affirmatively misrepresented it.  One can hardly disclaim the lack of intent to persuade while one is simultaneously employing a specific description of the car's history in a sales pitch.  

We acknowledge that Miller's claims about William Chevrolet's intent to induce are compromised by Miller's failure, at the time of the negotiation, to state to the salesperson that he would not purchase a car previously used by a rental company.   At the very least, however, this discussion reveals that Miller has raised genuine issues of material fact pertaining to the intent element of common law fraud. 

4.  Reliance

William Chevrolet argues that Miller's reliance on the assertion that the car was executive driven is unreasonable as a matter of law.  Because Miller ultimately signed the back of the car's title, the front side of which listed Enterprise as the previous owner, William Chevrolet claims that Miller cannot assert that he reasonably relied on its oral statements about the Altima's history.  

The law will not allow a person to enter into a transaction with eyes closed to material facts and then claim fraud by deceit.
  To sustain a claim, plaintiffs must demonstrate that they "justifiably relied on defendant's words or silence." 
Central States Joint Board v. Continental Assurance Co.
, 117 Ill. App. 3d 600, 606, 453 N.E.2d 932, 936 (1983).
  The right to rely depends on consideration of all the surrounding circumstances. 
 
 Central States Joint Board
, 117 Ill. App. 3d at 606, 453 N.E.2d at 936.  
But see
,  
Roadside Auto Body, Inc. v. Miller
, 285 Ill. App. 3d 105, 114, 673 N.E.2d 1145, 1151 (1996); 
Commerical National Bank v. Federal Deposit Insurance Corp.
, 131 Ill. App. 3d 977, 982, 476 N.E.2d 809 (1985); 
Carter v. Mueller
, 120 Ill. App. 3d 314, 319-20, 457 N.E.2d 1335, 1340 (1983) (all indicating that when defendants make positive statements of material fact in intentional tort cases, the plaintiffs' negligence in failing to uncover the truth is not fatal).

One of the most important of the surrounding circumstances is timing.  A plaintiff may not generally rely on representations made when the plaintiff has ample opportunity to ascertain the truth of the matter 
before
 acting.  
Carter
, 120 Ill. App. 3d at 319, 457 N.E.2d at 1340.  From the record, it appears that the certificate of title was the sole document that revealed the Altima's prior owner.  The date on which the title was signed over to Miller reads March 25, 1998.  The contract of sale, however, bears the date February 27, 1998.  Thus the record reflects that Miller's opportunity to find out the car's history did not occur until after he was obligated on the sales contract.  In a similar case involving misrepresentations about a used car's history, the plaintiff signed documents revealing the vehicle's past as a rental only after she signed the sales contract.  
Duran v. Leslie Oldsmobile, Inc.
, 229 Ill. App. 3d 1032, 1042, 594 N.E.2d 1355, 1363 (1992).  The court concluded that "a plaintiff's subsequent opportunity to inform himself of the true facts contradicting such misrepresentation cannot render such prior reliance unreasonable." 
Duran
 229 Ill. App. 3d at 1042, 594 N.E.2d at 1363.  Likewise, Miller's later opportunity to discover the truth behind the alleged misrepresentation does not alter the nature of his reliance at the time he signed the sales contract and became legally obligated to William Chevrolet.  This issue at least raises a material question of fact sufficient to be presented to the trier of fact.

Regardless of this timing analysis, a triable question remains whether Miller's reliance on the statements of the salesperson was reasonable.  For example,"where the person making the statement has inhibited plaintiff's inquires ...by creating a false sense of security" the failure to inquire into facts that could be made available to the plaintiff is not fatal.  
Carter
 
, 120 Ill. App. 3d at 319, 457 N.E.2d at 1340.  Whether a plaintiff's reliance was reasonable under these circumstances is generally considered a question of fact.  
Mitchell v. Skubiak
, 248 Ill. App. 3d 1000,1006, 618 N.E.2d 1013, 1018 (1993). In this case, a reasonable trier of fact could conclude that the phrase "executive driven" was designed to and did create exactly this sort of false sense of security.  

Defendant also asserts that the sales contract indicated that the car was "used" and therefore any facts plaintiff inferred from the phrase executive driven could not be reasonably relied upon.  The record reveals, however, that plaintiff never doubted that the vehicle was used: he was purchasing a 1997 model year car in 1998.  Plaintiff instead claims that the designation of "used" in a box labeled "New or Used" did not contradict nor call into question the salesperson's classification of the car as "executive driven."

5.  Damages 

Unlike many of the common law requirements discussed above, damages are a necessary element of the 
prima facie
 case for both plaintiff's common law and statutory consumer fraud claims.  
Connic
k 174 Ill. 2d at 496, 675 N.E.2d at 591 (damage is an element of common law fraud); 815 ILCS 505/10a (West 1998) ("Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.").  We will therefore address the question of damages for both claims in this single section.

The trial court found that, as a matter of law, plaintiff could not prove damages resulting from William Chevrolet's alleged misrepresentations about the history of the Altima.  In the absence of any complaints by plaintiff about the car's condition during his use of it, the trial court found that plaintiff's alleged loss of confidence in the car and his assertion that he overpaid and had lost resale value because he was misled about the car's history were not legally cognizable harms.

Illinois courts have generally allowed damages claims based on diminished value of a product regardless of whether it has yet malfunctioned, provided the product contains a manifested defect or current condition affecting value.  
In re General Motors Type III Door Latch Litigation
, Nos. 98 C 5836, 99 C 2566, MDL 1266 (N.D. Ill. May 21, 2001).  In 
Schiffner v. Motorola, Inc.
, 297 Ill. App. 3d 1099, 697 N.E.2d 868 (1998) a class of cellular phone users claimed that defects in disclosure of and protection from potential health risks diminished the value of their phones.  No class member had suffered any physical injury from the defect, nor did the phones fail to operate.  The court held that Illinois law does allow damage claims "for diminished value of an allegedly defective product without the pleading of any damages to the product or person..."  
Schiffner
, 297 Ill. App. 3d at 1108, 697 N.E.2d at 874.  Likewise, in 
Perona v. Volkswagon of America, Inc.
, 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997) the court recognized plaintiffs' claimed loss of resale value for Audi 5000 models with an alleged defect in the acceleration system despite the fact that no plaintiff had been injured in their Audi.
  

In 
Connick v. Suzuki
, 174 Ill. 2d 482, 675 N.E.2d 584 (1996), the Illinois Supreme Court reinstated a consumer fraud claim the damages portion of which alleged only diminution in value.
  The plaintiffs in
 
Connick
 claimed to be injured by the reduction in resale value of certain Suzuki vehicles vulnerable to an increased risk of rollover.  
Connick
, 174 Ill. 2d at 489. 675 N.E.2d at 588.  Although the
 court did not address the damages question in depth, their reinstatement of the claim illustrates, at least by implication, that loss of value constitutes a cognizable injury sufficient to support a fraud claim. 

In deciding that Miller failed to raise a genuine issue of material fact regarding damages, the trial court relied primarily on the recent 
Kelly v. Sears Roebuck Co.
, 308 Ill. App. 3d 633, 720 N.E.2d 683 (1999) decision.
  The court there found that a risk that a product may in the future either fail or provide unsatisfactory performance is insufficient to adequately state a compensable injury.  
Kelly
, 308 Ill. App. 3d at 644, 720 N.E.2d at 692. The facts in 
Kelly
, however, distinguish it from the instant case.  In 
Kelly
, the plaintiff claimed that Sears sold him a car battery as "new" which might have been used, and therefore might have been of lesser quality than a new battery.  
Kelly
, 308 Ill. App. 3d at 642, 720 N.E.2d at 690.  The plaintiff could not, however, establish that he had in fact been sold a used battery.  In effect, allowing the plaintiff's claim based merely on a question as to whether his battery was used would have dictated that damages could be obtained by every purchaser of a Sears car battery during the relevant time period, without ascertaining the existence of any defect.  The 
Kelly
 court distinguished 
Schiffner
, 
Connick
, and 
Perona
 on exactly this point by noting that those cases involved diminution in resale value or diminished value from a known defect and thus  "illustrate easily cognizable actual injuries and damages, while any injury in the present case is speculative at best." 
Kelly
, 308 Ill. App. 3d at 644, 720 N.E.2d at 692. 
 

In the instant case, William Chevrolet does not dispute that the car in question was owned previously by a rental company.  And Miller's opinion witness presented evidence of diminished value of rental cars generally.  Unlike the theoretical, future possibility of lost value facing the plaintiff in 
Kelly
, Miller has raised a question of material fact regarding the presently diminished value of the Altima along the lines of that raised in 
Perona
, 
Schiffner
, and 
Connick
.  We therefore conclude that the trial court erred in granting summary judgment to defendants on the issue of damages.

Illinois Consumer Fraud and Deceptive Business Practices Act

The Illinois Consumer Fraud Act (hereinafter "the Act") eliminated many of the common law fraud elements, creating a new cause of action that affords consumers broad protection by prohibiting any "deception" or "false promise."  
Smith v. Prime Cable of Chicago
, 276 Ill. App. 3d 843, 856, 658 N.E.2d 1325, 1335.  Section 2 of the Act itself provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2. 

The Act offers "a clear mandate to the Illinois courts to utilize the Act to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers."  
Totz v. Continental Du Page Acura
, 236 Ill. App. 3d 891, 901, 602 N.E.2d 1374,
 1380 (1992).  As has often been noted, the Act is to be construed liberally to effect its purposes. 
Connick
, 174 Ill. 2d at 504, 675 N.E.2d at 594, 
Cuculich v. Thompson Consumer Electronics, Inc
, 317 Ill. App. 3d 709, 716, 739 N.E.2d 934, 939 (2000).  

The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) that the deception occur in a course of conduct involving trade and commerce; and (4) damages.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  Damages are discussed above and the third element is not disputed in the instant case.  This list illustrates that under the Act a consumer need prove significantly fewer elements than required to satisfy a common law fraud claim.  
Siegel v. Levy Organization Development Co.
, 153 Ill.2d 534, 543, 607 N.E.2d 194, 198.  For example, the plaintiff's reliance on the defendant's deception is not an element of a consumer fraud claim.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  Instead, the plaintiff need show only that the fraud "proximately caused" plaintiff's injury.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  Nor need the defendant have intended to deceive the plaintiff; innocent misrepresentations or material omissions intended to induce the plaintiff's reliance are actionable.  
Duran v. Leslie Oldsmobile, Inc.
, 229 Ill. App. 3d 1032, 1039, 594 N.E.2d 1355, 1361 (1992).

Having raised triable issues under the more stringent requirements of common law fraud, plaintiff finds his consumer fraud case virtually made.  As the Illinois Supreme Court has noted, 

"In superimposing the elements of the two causes of action and holding them up to the light, it is unquestionable that so long as the alleged deception occurred in a course of conduct involving trade or commerce, facts satisfying a claim for common law fraud will necessarily satisfy a claim under the Act."  
Siegel
, 153 Ill. 2d at 543, 607 N.E.2d at 198.  

The following discussion of Miller's statutory claims will therefore be brief.

The "deceptive practice" requirement under the Act is met by the defendant's material misrepresentation as discussed under common law fraud above.  The intent required by the Consumer Fraud Act "is merely the defendant's intent that the plaintiff in the action rely on the ... information the defendant gave to plaintiff as opposed to any intent to deceive" as required under the common law.  
Breckenridge
, 246 Ill. App. 3d 810, 822, 616 N.E.2d 615, 622-23 (1993).
  As Miller raised a genuine issue of fact regarding William Chevrolet's intent to deceive under the common law, he has also raised a triable issue of defendant's intent under the relaxed standard applied by the Act.

Although plaintiffs need not establish reliance as an element of their consumer fraud claim, plaintiffs must show that the fraud "proximately caused" their injury.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  Because the "theory of reliance is ambiguously present within the parameters of the concept of proximate cause," logic dictates that Miller's success in raising a material issue of genuine fact concerning his actual reliance satisfies this element of consumer fraud.  
Zekman v. Direct American Marketers, Inc.
, 286 Ill. App. 3d 462, 574, 675 N.E.2d 994, 998 (1997), (overruled on other grounds 182 Ill. 2d 359 (1998)).

Furthermore, 
Connick
 illustrates that timing is a key determination in the proximate cause analysis: "plaintiffs can state a valid claim of consumer fraud only where premised upon statements made prior to their dates of purchase."  
Connick
, 174 Ill. 2d at 502, 675 N.E.2d at 594.  In this case, William Chevrolet does not dispute the timing of the alleged statement: if it was made, it was made before the plaintiff signed the sales contract.  Additionally, the
 proximate cause analysis demands a determination that no intervening cause broke the chain of proximate causation between the allegedly fraudulent statements and the purchase.  
Connick
, 174 Ill. 2d at 504, 675 N.E.2d at 595
.  In this case, the record contains no facts showing such an intervening cause.  As the 
Connick
 court also held, determination of proximate cause is best left to the trier of fact, (
Connick
, 174 Ill. 2d at 504, 675 N.E.2d at 595
), and thus is an inappropriate basis for summary judgment except in circumstances more extreme than those presented here.

Finally, the Act eliminates any requirement of plaintiff diligence in ascertaining the accuracy of misrepresentations.  
Duran
, 229 Ill. App. 3d at 1039, 594 N.E.2d at 1361.  When a defendant makes a an affirmative misrepresentation of material fact with the intention of inducing the plaintiff's reliance, plaintiff's negligence works no bar to a consumer fraud action.   
Connor v. Merrill Lynch Realty, Inc.
, 220 Ill. App. 3d 522, 530, 581 N.E.2d 196, 202 (1991); 
Beard v. Gress
, 90 Ill. App. 3d 622, 627-28, 413 N.E.2d 448, 452.  Miller's possible negligence in failing to ascertain the Altima's previous owner is therefore irrelevant to his claim for fraudulent misrepresentation under the Act.

We therefore conclude that Miller has raised sufficient issues of material fact to survive a motion for summary judgment  on his claim of fraudulent misrepresentation under the Consumer Protection Act.

III  Fraudulent Concealment

Plaintiff also asserts claims for fraudulent concealment under both the Consumer Protection Act and the common law.  As to the common law claim, we have no quarrel with the trial court's ruling.  As to the claim under the Act, however, we reverse and remand.

In his complaint, Miller alleges that William Chevrolet committed fraud by failing to directly disclose that the Altima was previously a rental car.  In order to establish a common law claim for fraudulent concealment, a plaintiff must prove that the defendant was under a duty to disclose the fact concealed.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  

Although most cases involving a duty to disclose arise out of a breach of a fiduciary relationship, courts have found that a confidential relationship may also give rise to a duty.  A confidential relationship exists when a plaintiff puts sufficient trust a defendant that the latter is in a position of "influence and superiority" over the plaintiff.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  As one court put it, the defendant must be "clearly dominant, 'either because of superior knowledge of the matter derived from * * * overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side.'" 
Mitchell v. Norman James Construction Co.
, 291 Ill. App. 3d 927, 934, 684 N.E.2d 872, 879 (1997) (quoting 
In re Estate of Neprozatis
, 62 Ill. App. 3d 563, 569, 378 N.E.2d 1345 (1978)). 

In this case, Miller argues that the relationship between a car dealer and a prospective customer entails such a disparity of influence and knowledge that dealers generally owe a duty to disclose the history of vehicles for sale.  We do not find this argument persuasive.  Barring additional facts, the arms length transaction that occurred between Miller and William Chevrolet did not give rise to a confidential relationship sufficient to impose a general duty of disclosure under the fairly rigorous principles of common law.  
Mitchell
, 291 Ill. App. 3d at 934, 684 N.E.2d at 879.  Like the conventional mortgagor-mortgagee relationship that the 
Mitchell
 court found to fall short of a confidential relationship, this dealer-customer relationship did not possess sufficient indicia of disparity in experience or knowledge such that the dealer could be said to have gained influence and superiority over the purchaser.  The record reflects that Miller had no interaction with the dealership prior to this transaction and Miller alleges no particular facts arising from the negotiation to indicate overwhelming influence on William Chevrolet's part.  Because Miller cannot establish that William Chevrolet owed a duty to disclose the Altima's ownership history, his common law fraudulent concealment claim fails.

Plaintiff's claim under the Consumer Protection Act, however, is more persuasive. The Act generally does require that sellers engaged in trade or commerce disclose any material facts to consumers, regardless of the existence of a common law duty.   815 ILCS 505/2 (West 1998).  While always watchful that the Act not be used to "transform nondeceptive and nonfraudulent omissions into actionable affirmations," (
Mackinac
, 271 Ill.App.3d at 142, 207 Ill.Dec. 781, 648 N.E.2d at 240), courts have recognized that the common law duty requirements do not appear in the Act's broad language.  A federal district court surveying Illinois law on the subject noted, "the common law requirement of a duty to disclose is not required in order for an omission or concealment to be actionable under the Consumer Fraud Act." 
Celex Group Inc. v. Executive Gallery Inc.
, 877 F.Supp. 1114, 1130 (1995).  

An Illinois court reached the same conclusion in 
Totz v. Continental Du Page Acura
, 236 Ill. App. 3d 891, 901, 602 N.E.2d 1374, 1380-81 (1992).  The 
Totz
 court reiterated the maxim that the legislature intended the Act to expand the rights of consumers beyond the common law to eliminate all forms of deceptive or unfair business practices.  The court then went on to hold 
that the failure of a used car dealer to disclose a known history of vehicle damage was actionable under the Act, regardless of the existence of a common law duty to disclose. 
Totz
, 236 Ill.App.3d at 903, 602 N.E.2d at 1381.  

The 
Totz
 court reminds that the Act is not without its own criteria.  The court held that section 2 of the Act indicates that sellers engaged in trade or commerce, including used car dealers, have a duty not to conceal or suppress known material facts regarding products from potential buyers with the intent that buyers rely thereon.  
Totz
, 236 Ill. App. 3d at 902, 602 N.E.2d at 1381.  Under this interpretation, plaintiffs must establish that the fact concealed was known to the seller at the time of concealment.
(footnote: 2)  Unlike an action for misrepresentation under the Act, where even innocent misrepresentations can support liability, an action for fraudulent concealment logically demands that defendants have prior knowledge of the information that they are alleged to have suppressed.  Plaintiffs must also establish that the fact concealed was material (see our discussion of materiality in an earlier portion of this opinion).  Finally, plaintiffs must establish that the defendants intended that they rely on the suppression in making their choice to buy.  As the 
Totz
 court noted, circumstantial evidence may be used to establish the seller's intent.  
Totz
, 236 Ill. App. 3d at 903, 602 N.E.2d at 1382.  

In the instant case, plaintiff's allegations of affirmative fraudulent misrepresentation provide strong circumstantial evidence of defendant's intent in its passive concealment as well.  Defendant allegedly used the phrase "executive driven" to conjure an image of the Altima's history in plaintiff's mind in the hope that plaintiff would rely on this image in purchasing the vehicle.  The strong inference exists that defendant did not disclose the Altima's actual history as part and parcel of that same intent.

As the above discussion reveals, we find that plaintiff raised triable questions of knowledge, materiality, and intent.   We find therefore that the trial court erroneously granted summary judgment on Miller's claim of fraudulent concealment under the Act. 

IV  Plaintiff's Claims Against HAFC

The trial court noted that HAFC did not join William Chevrolet's motion for summary judgment, nor did they file one of their own.  Nevertheless, the trial court granted summary judgment for both defendants indicating that its conclusions were equally applicable.  Unlike usual holder in due course, HAFC is subject to all claims and defenses which Miller could assert against William Chevrolet both under the terms of the contract and under federal law.  16 C.F.R. § 433.2 (1998).  In essence, HAFC's liability is derivative of William Chevrolet's liability.  We therefore find that the above discussion of the summary judgment applies to Miller's claims against HAFC.

V.  Punitive Damages

Having disposed of Miller's claims on more preliminary grounds, the trial court did not discuss punitive damages in its judgment.  In consideration of our reinstatement of three of the plaintiff's fraud claims, we find that ruling on the award of punitive damages is premature at this time.  
Siegel
, 153 Ill. 2d at 547, 607 N.E.2d at 200.

CONCLUSION

We reverse the trial court's determination that plaintiff failed to raise a genuine issue of material fact regarding his fraudulent misrepresentation claims under both common law and the Consumer Fraud Act, and his fraudulent concealment claim under the Act.  As to these claims and both defendants, we vacate and remand to the trial court.  We affirm the trial court's grant of summary judgment for both defendants on plaintiff's claim of common law fraudulent concealment.

BURKE, P.J. and CAHILL, J., concur.

FOOTNOTES
1:
During the course of litigation, Household Automotive Finance Corporation (HAFC) became the successor in interest to HFC Auto Credit Corporation.  Successive references to this co-defendant will use the new name HAFC.

2:
In the instant case defendant does not dispute that the title information was available to it prior to discussion with plaintiff.