627 S.E.2d 733

Lorraine S. WILSON, Joseph Pinckney, Jr., Michael Lisbon, Judy Spradley, Clifford Middletown and Arthur Meeks, on behalf of themselves and others similarly situated, Appellants,

v.

STYLE CREST PRODUCTS, INC, Tie Down Engineering, Minute Man Products, Champion Home Builders Co., CMH Manufacturing, Inc. d/b/a Clayton Homes, Inc., Fleetwood Enterprises, Inc., Fleetwood Homes of Georgia, Inc., Horton Homes d/b/a Dynasty Homes, Inc., and d/b/a H & S Homes, HBOS Manufacturing, Limited Partnership a/k/a HBOS Manufacturing, LP successor in interest of Schult Homes Corporation, successor in interest of Homes by Fisher, Inc. and Southern Energy Homes, Defendants,

of whom Style Crest Products, Inc., Tie Down Engineering, Minute Man Products, Champion Home Builders Co., CMH Manufacturing Inc. d/b/a Clayton Homes, Inc., Fleetwood Enterprises, Inc., Fleetwood Homes of Georgia, Inc., Horton Homes d/b/a Dynasty Homes, Inc. and d/b/a H & S Homes and Southern Energy Homes are the Respondents.

No. 26122.

Supreme Court of South Carolina.

Heard Oct. 4, 2005.
Decided March 6, 2006.

Christopher McG. Holmes, of Mount Pleasant, and Paul J. Doolittle, of Motley Rice, of Mount Pleasant, for Appellants.

Albert A. Lacour, III, of Clawson & Staubes, Inc., and Michael A. Scardato, of McNair Law Firm, P.A., both of Charleston, and Robert L. Widener, of McNair Law Firm, of Columbia, for Respondent Minute Man Products, Inc.; Charles E. Carpenter, Jr., Steven J. Pugh, and Drew Hamilton Butler, all of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia; and John K. Blincow, Jr., and Sean A. O'Connor, both of Turner, Padget, Graham & Laney, P.A., of Charleston, for Respondent Style Crest Products, Inc.; Benjamin D. McCoy, Andrew E. Haselden, and Rowland P. Alston, III, all of Howser, Newman & Besley, L.L.C., of Columbia, for Respondent CMH Manufacturing; C. Tyson Nettles, of Robertson & Hollingsworth, of Charleston; J. Boone Aiken, of Aiken, Bridges, Nunn, Elliott & Taylor, P.A., of Florence, for Respondent Horton Homes; Morgan S. Templeton, of Elmore & Wall, P.A., of Charleston, and W. Scott Simpson, of Batchelor & Simpson, of Birmingham, for Respondent Southern Energy Homes; R. Michael Ethridge and N. Keith Emge, Jr., both of Carlock, Copeland, Semler & Stair, L.L.P., Robert T. Lyles, Jr., of Lyles & Lyles, L.L.C., all of Charleston, and Cari Hicks, of Leatherwood, Walker Todd & Mann, of Greenville, for Respondent Tie Down Engineering; S. Keith Hutto, C. Mitchell Brown, and William H. Latham, of Nelson, Mullins, Riley & Scarborough, L.L.P., of Columbia, for Respondents Fleetwood Enterprises, Inc., Fleetwood Homes of Georgia, and Champion Enterprises.

Justice WALLER:

This is a class action in which the circuit court granted the defendants summary judgment. We affirm.

## FACTS

The Appellants (hereinafter referred to as "Homeowners") own mobile homes in South Carolina which were manufactured by several of the respondents (hereinafter referred to as "Home Defendants"). The homes are secured by a soil anchor tie down system with component parts which were manufactured and sold by the respondents Style Crest Products, Tie Down Engineering, and Minute Man Products (hereinafter referred to as "Anchor Defendants"). The Homeowners allege all the Defendants are liable for the failure of the anchor

system to adequately secure their homes in high winds. They allege the anchor systems do not meet applicable United States Department of Housing and Urban Development (HUD) and the South Carolina Manufactured Housing Board codes. The Homeowners are seeking to recover the cost of the anchor systems, approximately $1,000–$1,200 each, the cost to upgrade the anchor system to one which is effective, or the cost of a permanent foundation, approximately $2,500–$7,000 each.

In their complaint, the Homeowners allege: 1) negligence; 2) negligence per se; 3) breach of express warranty; 4) breach of implied warranty of workmanlike service; 5) breach of implied warranty of merchantability; 6) fraud and misrepresentation; 7) negligent misrepresentation; and 8) fraudulent concealment. In two separate orders, the circuit court granted the Defendants' summary judgment motions primarily on the ground that the Homeowners have not suffered any actual damages. The Homeowners appeal only the grant of summary judgment as to: Count 3 (breach of express warranty) against only the Home Defendants; and Counts 4, 5, and 8 (breaches of implied warranty of workmanlike service and merchantability and fraudulent concealment) against both Defendants. The Homeowners do not appeal the grant of summary judgment as to the other claims, i.e. negligence/tort claims.

## DISCUSSION

### Standard of Review

■ Summary judgment is proper only when it is clear that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Hamilton v. Miller*, 301 S.C. 45, 47, 389 S.E.2d 652, 653 (1990). Even when there is no dispute as to the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Id.*

### Damages

 The Homeowners concede that they have not suffered any personal injuries or physical damage to their homes. However, they contend they have suffered an economic loss by purchasing a defective product.[1] They allege they purchased a faulty anchor system which does not adequately secure their homes. The pivotal issue in this case is whether the Homeowners must prove an actual injury to person or property to bring their warranty and fraudulent concealment claims.[2]

Arguably, a few cases support the Homeowners' position that the loss of the benefit of the bargain is sufficient damage in a warranty action. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir.2001) (holding damage was loss of "benefit of the bargain"); *Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex.App.1995) (holding buyer of defective software program has warranty action even if he never suffers data loss as a result of the defect because buyer did not get what he bargained for). However, the no-injury approach to product litigation has been rejected in most decisions. *See, e.g. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir.1999). In *Briehl*, the plaintiffs brought a class action fraud lawsuit based on an allegedly defective anti-lock brake system (ABS) in vehicles manufactured by General Motors. The plaintiffs did not allege that the brake system had ever malfunctioned or failed. The Eighth Circuit Court of Appeals held that "[t]he Plaintiff's conclusory assertions that they, as a class, have experienced damages ... are simply too speculative to allow this case to go forward. The Plaintiffs' assertions that their ABS-equipped vehicles are defective and that they have suffered a loss in resale value as a result of the defect is insufficient as a matter of law to plead a claim under any

---

1. A defective product causes a purely economic loss when the product causes no personal injuries and damages no property other than the "product itself." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

2. The Homeowners contend the circuit court misconstrued their claims as alleging products liability claims rather than claims for breaches of warranties. We disagree. The circuit court judge specifically noted that under either a tort or products liability theory, the Homeowners must establish an actual injury citing *Small v. Pioneer Machinery, Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1997).

theory the plaintiffs have advanced." *Id.* at 629. *See also e.g. Jarman v. United Industries Corp.*, 98 F.Supp.2d 757 (S.D.Miss.2000) (dismissing fraud, warranty, and various statutory claims for purchase of allegedly ineffective pesticide where there is no allegation of actual product failure); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y.1997)(dismissing class-action fraud and warranty lawsuit for allegedly defective integrated child seats where there is no allegation that the product has malfunctioned or the defect manifested itself); *Yost v. General Motors Corp.*, 651 F.Supp. 656 (D.N.J.1986)(dismissing fraud and warranty claims for alleged engine defect where engine has not malfunctioned and plaintiff alleges diminished value only).

In most of these cases, the defective products the plaintiffs had purchased had performed satisfactorily and, therefore, the courts found that the plaintiffs had reaped the benefit of their bargain and could not bring a warranty action. "That is simply another way of saying that the products were, in fact, merchantable, and therefore there was no breach of warranty." *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F.Supp.2d 1069, 1100 (S.D.Ind.2001). Likewise, here, the anchors are merchantable. The evidence here is that the plaintiffs have received what they bargained for— an anchor system which has been effective in high winds. There is no evidence that the anchor systems have not, to date, been exactly what the Homeowners bargained for. In fact, here, several Homeowners testified at their depositions that their mobile homes have weathered hurricanes without any damage.[3]

Additionally, a few jurisdictions have concluded that the "diminution in value" of a product alone is enough to succeed on a common-law fraud claim. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill.App.3d 642, 260 Ill.Dec. 735, 762 N.E.2d 1 (2001). However, without an injury or a defect, there has been no diminution in value to support the Homeowner's fraudulent concealment claim.

---

[3]. The Homeowners rely on studies conducted over the past twenty-five years which they contend establishes that the anchor systems are flawed and do not adequately secure mobile homes. Many of these studies were conducted by HUD. As the Homeowners contend, the studies have "questioned the effectiveness of the soil anchor system."

We hold the Homeowners need to show that the product delivered was not, in fact, what was promised and they have not shown that. Accordingly, the circuit court's grant of summary judgment is

**AFFIRMED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur. PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES, concurring in part and dissenting in part:

I concur in part and respectfully dissent in part. Although my reasoning differs from the majority's, I agree that the grant of summary judgment to the Home Defendants should be affirmed with respect to all of Homeowners' breach-of-warranty claims. Also, but for different reasons, I concur in the majority's affirmance of the grant of summary judgment to the Anchor Defendants with respect to Homeowners' claim for breach of the implied warranty of workmanlike service. I dissent from the majority's affirming the grant of summary judgment to the Anchor Defendants with respect to Homeowners' claim for breach of the implied warranty of merchantability, and from its affirmance of the grant of summary judgment to both defendants on the fraudulent-concealment claim.

## FACTS

The Home Defendants manufactured and sold the mobile homes at issue to retailers, which in turn sold them to Homeowners. In an effort to comply with regulations promulgated pursuant to the National Manufactured Housing Construction Safety Standard Act of 1974,[4] the Home Defendants provided with each home a manual suggesting that the anchor system was a device suitable for stabilizing the home. *See* 24 C.F.R. § 3280.306(b) (2004). As required by the regulation, the manual included drawings and specifications of the anchor system, as well as installation instructions. The manual's contents were certified as complying with HUD standards by

---

**4.** 42 U.S.C.A. §§ 5401–5426 (2003).

a Design Approval Primary Inspection Agency (DAPIA), which is a "State agency or private organization that has been approved by the Secretary [of HUD] to evaluate and either approve or disapprove manufactured home designs and quality control procedures." 42 U.S.C.A. 5402(18) (2003).

Homeowners' claims against the Home Defendants relate to the information about the anchor system provided in the installation manual. Homeowners' claims against the Anchor Defendants relate to the quality of the anchor system itself.[5] Homeowners have presented evidence of studies, including studies conducted by HUD, indicating that the anchor system does not meet HUD standards and is inadequate under certain wind conditions. Homeowners concede that the anchor system has caused no damage to any person or property, but they argue that they are entitled to damages because they did not receive the benefit of their bargain.

## ANALYSIS

I disagree with the majority that Homeowners must allege and prove physical injury to person or property in order to pursue their breach-of-warranty and fraudulent-concealment claims. This disagreement requires me to address issues not reached in the majority opinion.

### I. IMPLIED WARRANT OF MERCHANTABILITY

I cannot concur in the majority opinion's holding that without a claim of physical injury to person or property, a plaintiff may not successfully pursue a breach-of-warranty claim. While the term "products liability" generally brings to mind liability in tort—negligence and strict liability—the third theory of products liability, breach of warranty, is a contract theory. *See* James J. White, *Reverberations from the Collision of Tort and Warranty,* 53 S.C. L.Rev. 1067 (2002) (discussing the prevalent and unfortunate misunderstanding of the difference between tort and contract claims in the field of products liability). If the plaintiff asserts that the defendant is liable in tort for a defective product, then of course the

---

5. The Home Defendants did not sell the anchor system at issue. The Anchor Defendants did. HUD does not require that home manufacturers provide the stabilizing device. 24 C.F.R. § 3280.306(a)(2) (2004).

plaintiff must prove physical injury to person or property. There is no doubt, however, that a plaintiff who asserts breach of warranty must prove only that his contractual expectations were not fulfilled. *See* S.C.Code Ann. § 36–2–714 (2003) (titled, "Buyer's damages for breach in regard to accepted goods"); *Gasque v. Eagle Mach. Co.*, 270 S.C. 499, 502–03, 243 S.E.2d 831, 831–32 (1978) (in a product-liability action involving a claim of breach of warranty under article 2 of the Uniform Commercial Code (U.C.C.), explaining that a buyer need prove only that the goods delivered by the seller were not as promised).

In the alternative, the majority opinion finds that even if contract law were applicable, Homeowners in fact received the benefit of their bargain because the anchor system was in fact merchantable. Yet, this finding of merchantability is based on the very fact that the anchor system has caused no physical injury. The majority opinion thereby derogates the principle that goods either conform to the contract upon delivery or they do not. Goods do not become non-conforming only upon causing injury.

In my opinion, it must be properly determined in the circuit court whether the anchor system sold by the Anchor Defendants was merchantable under South Carolina Code section 36–2–314.[6] If it was not, then Homeowners are entitled to relief under section 36–2–714. I would reverse the grant of summary judgment to the Anchor Defendants on the merchantability claim.

Conversely, the grant of summary judgment to the Home Defendants on the merchantability claim should be affirmed, but not for the reasons cited by the circuit court. First, as stated above, I disagree that Homeowners must prove physical injury to pursue this claim. Second, I disagree with the circuit court that the Home Defendants cannot be liable for breach of warranty because they did not sell the anchor system.[7] Homeowners' claim against the Home Defendants is

---

6. S.C.Code Ann. § 36–2–314 (2003).

7. Only a "seller" makes a warranty under article 2 of the U.C.C. *See* S.C.Code Ann. §§ 36–2–313 (express warranty), –314 (implied warranty of merchantability), and –315 (implied warranty of fitness for a particular purpose) (2003); *see also* S.C.Code Ann. § 36–2–318 (2003) (effec-

not that the *anchor system* was unmerchantable, but rather that the *mobile homes* sold by the Home Defendants [8] were unmerchantable because of the allegedly flawed anchor system. Homeowners emphasize that under HUD regulation 3280.306(b), the Home Defendants could not sell their mobile homes without providing the installation manual discussed above. According to Homeowners, if the anchor system recommended in the manual failed to meet HUD standards, then the mobile home was unmerchantable.

In my opinion, Homeowners improperly focus on the manual's recommendation of this particular stabilizing device. Regardless whether the anchor system fails to meet HUD regulations, is unmerchantable, or both, the important question is whether the *mobile homes* are fit for *their* ordinary purpose ... to serve as a dwelling. *See* S.C.Code Ann. § 36–2–314(2)(c). There is no evidence in the record, and Homeowners do not actually allege, that the mobile homes are unfit for that purpose.

The only reason that the mobile homes could be unmerchantable on account of the manual would be lack of HUD certification. A HUD approved manual is necessary for any mobile home to be "adequately ... labeled as the agreement may require." S.C.Code Ann. § 36–2–314(2)(e) (another test for merchantability). As mentioned above, the Home Defendants' manual was certified by a DAPIA on behalf of HUD.

For these reasons, I concur in the majority's affirming the grant of summary judgment to the Home Defendants on the merchantability claim.

## II. EXPRESS WARRANTY

I also concur in the majority's affirming the grant of summary judgment on Homeowners' express-warranty claim against the Home Defendants. Homeowners have failed to

---

tively abolishing the common-law rule of privity with respect to a "seller's warranty").

**8.** Homeowners purchased their respective mobile homes from third-party dealers, not the Home Defendants. That is unimportant to Homeowners' breach-of-warranty claims, however, for lack of privity is no defense to an article 2 breach-of-warranty claim. *See* S.C.Code Ann. § 36–2–318 (2003).

preserve their express-warranty claim against the Home Defendants for appellate review. The discussion of express warranty in the circuit court's order pertains only to installation of the anchor system, which is not the subject of Homeowners' claim. Homeowners' claim is that in the installation manual the Home Defendants expressly warranted the compatibility of the mobile homes and the anchor system. Because the circuit court's order does not address this issue, Homeowners needed to file a motion pursuant to Rule 59(e), SCRCP, asking the circuit court to rule on it. Homeowners failed to file such a motion; therefore, the express-warranty issue is not preserved for review. *See United Student Aid Funds, Inc. v. S.C. Dep't of Health and Envtl. Control*, 356 S.C. 266, 273, 588 S.E.2d 599, 602 (2003) (applying the rule that "where a trial court does not explicitly rule on an argument raised and appellant makes no Rule 59 motion to obtain a ruling, the appellate court may not address the issue") (from parenthetical to omitted citation).

### III. Implied Warranty of Workmanlike Service

I also agree with the majority that the circuit court did not err in granting summary judgment to both defendants on Homeowners' workmanlike-service claims. The implied warranty of workmanlike service is a service warranty created at common law. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex.1995). Here, the asserted liability of both defendants relates to their being sellers of goods. Assuming that one or both defendants provided some service, it was incidental to the sale of goods. Any breach-of-warranty claim in this case therefore falls within the specific warranty provisions in article 2 of the U.C.C. *See Plantation Shutter Co. v. Ezell*, 328 S.C. 475, 478–80, 492 S.E.2d 404, 406–07 (Ct.App.1997) (discussing and applying the "predominant factor" test for determining whether the U.C.C. or the common law of contracts governs); *see also Hitachi Elec. Devices (USA), Inc. v. Platinum Tech., Inc.*, 366 S.C. 163, 170, 621 S.E.2d 38, 41 (2005) (discussing and applying displacement of the common law when the U.C.C. "comprehensively addresses" a particular subject).

### IV. Fraudulent Concealment

Unlike the majority, I would hold that the grant of summary judgment to both defendants on the fraudulent-concealment claim should be reversed.

On one hand, the majority holds that a plaintiff must prove physical injury to person or property in order to successfully pursue a fraudulent-concealment claim. It has long been the rule, however, that the "measure of general damages in [a fraudulent-concealment] case, according to the 'benefit of the bargain' rule, is the difference between the actual value of [the property] at the time of the sale and the value that it would have had if the concealed defect had not existed." *Lawson v. Citizens and S. Nat'l Bank of S.C.,* 255 S.C. 517, 521, 180 S.E.2d 206, 209 (1971); *see also Starkey v. Bell,* 281 S.C. 308, 313, 315 S.E.2d 153, 156 (Ct.App.1984) (explaining that South Carolina "follows the majority 'benefit of the bargain' rule" in "an action for fraud and deceit").

On the other hand, the majority holds that "without an injury or a defect, there has been no diminution in value to support Homeowner's [sic] fraudulent concealment claim." In so holding, the majority suggests that a buyer receives the benefit of his bargain as long as the item purchased has not yet caused physical injury. This suggestion deviates from traditional analysis. As explained above, physical injury has nothing to do with whether a buyer has received the benefit of his bargain. *See Gasque,* 270 S.C. at 503, 243 S.E.2d at 832.

Whether Homeowners can prove the elements of their fraudulent-concealment claim has not been determined in the circuit court. The grant of summary judgment on this claim was based solely on the absence of asserted physical injury. The circuit court erred in this regard, and I would reverse the grant of summary judgment to both defendants on this claim.

## CONCLUSION

I concur in the majority's affirming the grant of summary judgment to the Home Defendants on the following claims: breach of the implied warranty of merchantability; breach of express warranty; and breach of the implied warranty of workmanlike service. I also concur in the majority's affirming the grant of summary judgment to the Anchor Defendants on the claim for breach of the implied warranty of workmanlike service.

I disagree with the majority's affirmance of the grant of summary judgment to both defendants on the fraudulent-

concealment claim, and to the Anchor Defendants on the claim for breach of the implied warranty of merchantability. I would therefore reverse the grants of summary judgment on these claims.