In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1341

RUSSELL W. ZEIDLER, et al.,

*Plaintiffs-Appellants*,

*v.*

A & W RESTAURANTS, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2591—**Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 20, 2001—DECIDED AUGUST 21, 2002

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Russell and Nancy Zeidler sued A & W Corporation for alleged breaches of contract and violations of the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1 *et seq*. The district court granted summary judgment to A & W, the Zeidlers appeal, and we affirm.

Beginning in 1993, the Zeidlers, through their company R.W. Hospitality Corp., owned and operated an A & W restaurant pursuant to a license agreement with A & W Restaurants, Inc. Unfortunately for the Zeidlers, the business venture was not a success. The restaurant lost money every year of operation, and in 1997 the Zeidler-A & W

relationship began to sour. By January 1998 A & W was sending letters threatening to terminate the license agreement because the Zeidlers had failed to maintain and run their restaurant according to A & W health and sanitation standards and because the Zeidlers had let lapse the liability insurance that the license agreement required them to carry. These were not hollow threats; under the license agreement, either charge provided grounds for termination. And a series of Quality Assurance Reports—prepared for A & W by a corporate representative who visited the Zeidlers' restaurant four times in three months—detailed the restaurant's filthy, disorganized condition and confirmed that the Zeidlers no longer retained insurance.[1] The Zeidlers closed their restaurant and removed its equipment on March 13, 1999, ostensibly because A & W's termination threats— which the Zeidlers claim were groundless and issued in bad faith—made the business impossible to run. On March 25, after receiving notification of the closure from the Zeidlers' restaurant-landlord, A & W sent the Zeidlers a letter formally terminating the franchise.

---

[1] These Quality Assurance Reports elaborated on the squalid condition of the Zeidlers' restaurant. During the representative's initial visit, he discovered a kitchen, reach-in freezer, and counter area in need of cleaning; out-of-uniform employees eating non-A & W food behind the counter without washing their hands afterwards; dirty bathrooms; and food stored on the floor of the walk-in freezer. He asked the Zeidlers to address these problems, but during a subsequent inspection found dirty dining room walls; old food encrusting the sandwich make-up board and grills; and a counter area, kitchen, and freezer that still needed cleaning. Furthermore, he noted that the Zeidlers' employees kept hamburgers, chicken sandwiches, hot dogs, and french fries unrefrigerated much longer than A & W allowed. The employees were also frying food in shortening that had not been properly filtered after previous use. Reports from the representative's last two inspections revealed no improvement.

Thirteen months later, the Zeidlers filed this suit against A & W and several of its corporate officers, ranging from the president and CEO to vice-presidents of finance, operations, and contract administration. The Zeidlers alleged that A & W's termination breached their license agreement, violated the IFDA, 815 ILCS 705/1 *et seq.*, and breached an independent state-law duty of good faith and fair dealing. The district court, sitting in diversity and applying Illinois law, dismissed part of the suit on the pleadings, holding that the individual defendants had insufficient personal contacts with Illinois for the court to exercise personal jurisdiction over them, and that Illinois law does not allow suit for breach of the duty of good faith and fair dealing. Then the court granted summary judgment to the remaining defendant, finding that A & W was justified in terminating the license agreement based on the Zeidlers' lapsed insurance, poor sanitation record, and decision to shut down the restaurant.

On appeal, the Zeidlers take issue with all of the district court's rulings. Their principal difficulty, however, is mounting any kind of challenge to one of the district court's dispositive holdings—namely, that the Zeidlers' closing down of their restaurant bars them from establishing that A & W wrongfully terminated the franchise. This holding is dispositive because we have said that a franchisee who abandons his or her franchise by closing it before the end of a license agreement's term may not bring a wrongful termination action against the franchisor who later terminates the agreement. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 875 (7th Cir. 1996). In *Moro*, franchisees closed a gas station that had become too expensive to run after the franchisor demanded that they pay for gasoline up-front rather than on a credit basis. They sued the franchisor under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, which required them to

prove that it was the franchisor—and not the franchisees themselves—who actually terminated the franchise. *Id.* at 875. The franchisees could not carry this burden, we held, because they had abandoned their gas station before the franchisor terminated the franchise agreement. *Id.*

Like the franchisees in *Moro*, the Zeidlers must prove that A & W wrongfully terminated their franchise in order to show that A & W breached the license agreement and violated the IFDA. In attempting to do so, they point to A & W's March 25 termination letter. But by March 25 the Zeidlers had already abandoned their restaurant and their relationship with A & W; that abandonment justifies A & W's subsequent termination and therefore prevents the Zeidlers from establishing their breach of contract claim. The abandonment also dooms their IFDA claim because the statute recognizes voluntary abandonment of a franchise as "good cause" for a franchisor to terminate a license agreement. *See* 815 ILCS 705/19(c)(2).

The Zeidlers attempt to forestall summary judgment on the basis of their abandonment by arguing that A & W forced them to close. The Zeidlers say that A & W accomplished this forced closure by sending the repeated termination threats. According to the Zeidlers, these threats were unfounded and motivated by a desire to drive them out of business so that A & W could sell their franchise to another franchisee. A business "cannot operate under the risk of termination," claim the Zeidlers, so they had to close their restaurant. The Zeidlers thus assert that we should ignore their abandonment of the restaurant because A & W's unjustified termination threats brought it about.

Although the Zeidlers do not cite cases supporting their argument, they seem to charge A & W with operating in "bad faith." "Bad faith" is a term of art in contract law; it

refers to one party's manipulation of contractual terms in order to take commercial advantage of another party. *See*, *e.g.*, *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 885-86 (7th Cir. 2001); *The Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). If a party is found to have acted in bad faith, then the other party is relieved of the effects of contractual breaches caused by that bad faith. *See Interim Health Care*, 225 F.3d at 885-86.

For example, in *Interim Health Care* there was evidence that the defendant-franchisor usurped its franchisee's territory in bad faith. This usurpation arguably forced the franchisee to default on royalty payments, prompting the franchisor to terminate the franchisee's contract. The franchisee then sued for wrongful termination. The district court granted summary judgment for the franchisor because it was undisputed that the franchisee defaulted. We reversed, however, because it was arguable that the franchisor's bad-faith actions brought about the very default upon which it based the termination. *Id.*

We are unpersuaded by the Zeidlers' argument that A & W—like the franchisor in *Interim Health Care*—operated in bad faith such that we should ignore their abandonment of the restaurant. First, we note that they have failed to offer any evidence that A & W acted in bad faith when it threatened to terminate the license agreement. In fact, A & W seems to have had good reasons to threaten to terminate: the Zeidlers' restaurant was in a slovenly condition and lacked the required insurance. The Zeidlers' unsupported assertions that A & W exaggerated the restaurant's horrid conditions are not evidence sufficient to defeat a motion for summary judgment. *See Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998).

Second, even assuming that A & W threatened the Zeidlers in bad faith, the Zeidlers have not shown how those threats *caused* them to shut the restaurant down. Bad faith only negates contractual breaches that it has brought about; if a party acting in bad faith has a reason to terminate—like the other party's abandonment of the agreement—that his or her bad faith has not caused, then he or she can do so. *See Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000). There is no evidence that A & W supported its termination threats with actions that made the restaurant impossible to run, such as refusing to supply the Zeidlers. And if A & W's termination threats were in fact unjustifiably undermining the business's profitability then the Zeidlers could have sued for the damages caused by those threats. *See, e.g.*, *Lippo v. Mobil Oil Corp.*, 776 F.3d 706, 716-17 (7th Cir. 1985). But the Zeidlers cannot argue that A & W's bad faith excused their closing down of the restaurant without demonstrating a causal link between A & W's termination threats and the restaurant's closure.

In conclusion, we note that the district court correctly dismissed on the pleadings the Zeidlers' remaining claim that A & W breached an independent covenant of good faith and fair dealing. The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-44 (7th Cir. 1992); *Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996).

AFFIRMED.

No. 01-1341                                            7

A true Copy:

   Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*