NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted February 14, 2007[*]
Decided February15, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No.  06-3319

| | |
|---|---|
| JAMES A. ZEIDLER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 03-C-5063 |
| A&W RESTAURANTS, INC., *Defendant-Appellee.* | Wayne R. Andersen, *Judge.* |

**O R D E R**

James Zeidler's A&W restaurant—which he operated pursuant to a franchise license agreement with A&W Restaurants, Inc. ("A&W")—never turned a profit. Zeidler closed the restaurant because "he could not continue to subsidize it," then filed this diversity suit under Illinois law claiming that A&W wrongfully terminated and breached the license agreement and committed fraud.  Zeidler appeals the district court's grant of summary judgment for the defendants, and we affirm.

Because Zeidler did not respond to A&W's motion for summary judgment in

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

the manner required by Local Rule 56.1(b)(3), the district court adopted A&W's statement of facts. On appeal Zeidler does not challenge that aspect of the court's decision, so our *de novo* review of the court's grant of summary judgment will rest on A&W's version of the facts. *See Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004).

In July 1996, Zeidler and A&W entered into a written license agreement that allowed Zeidler to open and operate an A&W restaurant in Streamwood, Illinois. Zeidler agreed to comply with the standards set forth in A&W's Operations Manual, which explicitly required him to "actively participate in the Restaurant business," and to ensure that the restaurant is open for ten hours a day no fewer than 360 days every year. The license agreement stressed this point: A&W would have grounds for termination if Zeidler "cease[d] to operate . . . or otherwise abandon[ed]" the restaurant.

Soon thereafter A&W learned that a Dairy Queen restaurant would open next to Zeidler's proposed location, and A&W tried to persuade him to cancel the agreement. A&W warned Zeidler that the Dairy Queen would decrease his restaurant's viability, that he would suffer great losses if he proceeded with opening the restaurant, and that A&W would not have approved the proposed location had it known about Dairy Queen's plans. A&W offered to refund the entirety of his franchise fees and equipment orders, but Zeidler ignored the warnings and opened the restaurant in March 1997.

Things at the restaurant went badly from the start. In the summer of 1997 A&W sent Zeidler two letters informing him that his restaurant was not meeting A&W's standards and specifications. Zeidler had trouble keeping his restaurant clean and had to fire several employees for theft. Zeidler also refused to submit profit and loss statements; A&W informed him that this "reprehensible" transgression was a violation of the Agreement. In the fall of 1998, Zeidler informed A&W that he intended to sell, lease, or close his restaurant because it was "losing a lot of money." He asked A&W for permission to close his restaurant for the winter because of its poor sales, and A&W granted his request.

Zeidler reopened the restaurant for the spring and summer of 1999, but in September 1999 he asked A&W for permission to close the restaurant again for the winter. Without waiting for a response, Zeidler closed the restaurant for eight days and began trying to sell the property. A&W promptly granted Zeidler's request to close for the winter beginning October 1st, but stated that he had to reopen by the following spring. The restaurant closed for the winter, and never again opened.

In April 2000 Zeidler wrote A&W the first letter in a string of correspondence relating to his failure to reopen the restaurant. In that letter, he informed A&W that it would be "impossible" for him to reopen. A&W requested an explanation and

informed Zeidler that he had breached the license agreement. Zeidler responded that it was impossible for him to reopen because he could "no longer continue to subsidize" the restaurant. Zeidler offered to sell A&W the restaurant, but it declined and reiterated to Zeidler that his failure to operate the restaurant constituted a breach of their license agreement. In early March 2001, Zeidler sent A&W a letter demanding that it provide him with its franchisee mailing list, but did not mention any plans to reopen the restaurant. A&W responded by letter of March 15, stating that Zeidler had abandoned the restaurant and "expressly reserv[ing] all rights and claims it may have with respect to Mr. Zeidler's abandonment of the restaurant." By that time, the restaurant had been closed for a year and a half.

Zeidler sued A&W, alleging that it violated the Illinois Franchise Disclosure Act ("IFDA"), 815 Ill. Comp. Stat. § 705/1 *et seq.*, by terminating the license agreement without good cause. He also claimed breach of contract, alleging that A&W ignored his requests for information he needed to reopen his restaurant. Zeidler also alleged fraud arising out of comments from A&W's former chief executive officer ("CEO") suggesting that the company knew before 1996 that free-standing A&W restaurants were not viable. The CEO had acknowledged in a 2002 investment relations broadcast that "when we bought the company, we realized we could not build free-standing buildings on corners—the unit economics simply wouldn't justify that." Zeidler alleged that A&W's failure to warn him in 1996 that the unit economics would not justify free-standing buildings constituted fraud. The parties filed cross-motions for summary judgment.

The district court granted A&W's motion and denied Zeidler's, reasoning that Zeidler's abandonment of the restaurant placed him in material breach of the license agreement, and this breach barred his wrongful termination and breach of contract claims. It also found that Zeidler's breach of contract claim failed because the evidence he submitted of A&W's purported refusal to communicate with him in the beginning of 2001 did "not rise to a level of unresponsiveness that would prevent Zeidler from reopening." The court also rejected Zeidler's fraud claims because A&W's failure to disclose its former CEO's understanding of the viability of free-standing buildings neither induced Zeidler to enter the license agreement nor injured him.

On appeal Zeidler first argues that the district court misunderstood his IFDA claim; he states that "the pertinent issue" is not whether A&W wrongfully terminated the license agreement, but whether A&W violated the IFDA by never issuing a notice of termination, thereby leaving him "in contractual limbo." But that is not the claim Zeidler alleged in his complaint. There, he repeatedly referred to the March 15 letter as a notice of termination and claimed that A&W violated the IFDA by "terminating the franchise without good cause . . . ." Zeidler is bound by his complaint's characterization of the March 15 letter as a notice of termination, *see Crest Hill Land Dev. LLC v. Joliet,* 396 F.3d 801, 805 (7th Cir. 2005); *Help at*

*Home, Inc. v. Med. Capital LLC,* 260 F.3d 748, 753 (7th Cir. 2001), and he cannot avoid summary judgment by now denying that A&W ever issued a notice of termination.

This late shift in Zeidler's IFDA claim is likely his attempt to skirt the rule that a franchisee who abandons his franchise by closing it before the end of the license agreement's term cannot prevail on a wrongful termination claim under the IFDA against the franchisor. *See (Russell) Zeidler v. A&W Restaurants, Inc.,* 301 F.3d 572, 574 (7th Cir. 2002). We articulated that rule in a factually similar case brought against A&W by Zeidler's brother, Russell. There we held that by closing his restaurant and removing its equipment twelve days before receiving a notice of termination, Russell had abandoned the franchise and could not sustain a wrongful termination claim against A&W. *Id.* Here, Zeidler closed his restaurant for more than 550 days before receiving a letter that he claimed constituted a termination notice. Zeidler's prolonged failure to reopen his restaurant despite A&W's warnings that the closure breached the agreement precludes his wrongful termination claim under the IFDA. *Id.*

Zeidler's arguments with respect to his breach of contract claim are difficult to parse, but he appears to argue that A&W breached the license agreement in two ways: first, by failing to issue a notice of termination; and second, by refusing to communicate with him. The first argument, however, is undermined by his breach-of-contract claim, which states that A&W faxed him a notice of termination on March 15, 2001, and he is again bound by that characterization. *See Crest Hill Land Dev. LLC,* 396 F.3d at 805. The second argument ignores the district court's conclusion that his breach of contract claim lacks a factual basis. Zeidler points to no evidence that calls into question the court's finding that the few attempts Zeidler made to communicate with A&W from December 2000 through March 2001 "do not rise to a level of unresponsiveness that would prevent Zeidler from reopening." Because Zeidler has not demonstrated a genuine issue of fact as to whether his failure to reopen the restaurant in March 2001 was caused by A&W's unresponsiveness, summary judgment was appropriate with respect to his breach of contract claim.

Finally, Zeidler renews his arguments that A&W committed fraud—under the Illinois Consumer Fraud Act, the IFDA, and common law—by failing to warn him of the CEO's belief that free-standing A&W restaurants were not viable. He argues that A&W deceived him by selling him a franchise knowing it would not succeed.

The IFDA claim fails because although Zeidler claimed wrongful termination under the IFDA, he never made a fraud claim under that statute. As the district court correctly noted, this court has held that the summary judgment stage "is too late in the day to be adding new claims." *Auston v. Schubnell,* 116 F.3d 251, 255

(7th Cir. 1997).

The Illinois Consumer Fraud Act and common law fraud claims are also meritless. These claims require Zeidler to show that A&W misrepresented or concealed a material fact. *See Miller v. William Chevrolet/Geo, Inc.,* 762 N.E.2d 1, 12 (Ill. App. Ct. 2001); *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 595 (Ill. 1996); *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.,* 794 N.E.2d 829, 835 (Ill. App. Ct. 2003). But this he has not done. He asserts that A&W concealed its knowledge that free-standings buildings were not viable restaurant locations, but cannot point to any evidence to dispute A&W's position in its statement of facts—accepted as true for purposes of our review—that in 1995 it approved free-standing restaurants when the particular characteristics of a proposed site suggested it was an economically viable location. In any event, the alleged nondisclosure is material only if Zeidler would have acted differently knowing the information. *See Connick,* 675 N.E.2d at 595. As the district court pointed out, A&W upon learning of the proposed Dairy Queen urged Zeidler not to proceed with his plan to open the restaurant. Indeed, A&W went so far as to warn him that his losses would be greater if he went forward with the project than if he withdrew, and offered even to refund his franchise fees and equipment orders. Because Zeidler cannot show that A&W concealed a material fact, the district court properly granted A&W summary judgment on Zeidler's fraud claims.

AFFIRMED.